UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOBIAS MOELLER-BERTRAM, Individually and On Behalf of All Others Similarly Situated,<br><br>                                                            *Plaintiff,*<br><br>v.<br><br>GEMINI TRUST COMPANY, LLC, and DIGITAL CURRENCY GROUP, INC.,<br><br>                                                            *Defendants.* | No. 23-cv-2027<br><br>Hon. Lewis J. Liman |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO COMPEL ARBITRATION</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................ 1

FACTS ............................................................................................................................................ 2

      A.      Overview ................................................................................................................ 2

      B.      Agreements Governing the Earn Program ............................................................ 2

STANDARD OF REVIEW ............................................................................................................ 3

ARGUMENT .................................................................................................................................. 4

    I.      The FAA Requires Enforcement of the Parties' Agreement to Arbitrate ........................... 4

    II.     Plaintiff Consented to Arbitration in the User Agreement. .................................................. 5

    III.    The Parties Have Delegated Issues of Scope and Arbitrability to the Arbitrator. .............. 9

    IV.   Plaintiff's Claims Against Gemini Fall Within the Scope of the
Arbitration Agreement. ....................................................................................................... 10

    V.    This Action Should Be Stayed Pending Arbitration of Plaintiffs' Claims. ....................... 11

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ................................................................................................................ 3, 4-5

*Bar-Ayal v. Time Warner Cable Inc.*,
No. 03-cv-99059-KMW, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ....................................... 10

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019) ........................................................................................... 4

*Contec Corp. v. Remote Solution, Co.*,
398 F.3d 205 (2d Cir. 2005) ......................................................................................................... 9

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020) ........................................................................................ 6, 7

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........................................................................................... 7

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ...................................................................................................................... 5

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ...................................................................................................................... 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .................................................................................................................... 9

*Hidalgo v. Amateur Athletic Union of U.S., Inc.*,
468 F. Supp. 3d 646 (S.D.N.Y. 2020) .................................................................................. 7, 9-10

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22 (2d Cir. 2010) .................................................................................................... 6

*Hudson Specialty Ins. Co v. N.J. Transit Corp.*,
No. 15-cv-89 (ER), 2015 WL 3542548 (S.D.N.Y. June 5, 2015) ............................................. 3-4

*Kindred Nursing Ctrs. LP v. Clark*,
581 U.S. 246 (2017) ...................................................................................................................... 5

*Maffea v. Ippolito*,
247 A.D.2d 366 (2d Dep't 1998) .................................................................................................. 6

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........................................................................................................ 6, 7

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
473 U.S. 614 (1985)...........................................................................................................11

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*,
88 F.3d 129 (2d Cir. 1996).................................................................................................3

*Parisi v. Goldman, Sachs & Co.*,
710 F.3d 483 (2d Cir. 2013)...............................................................................................3

*Patterson v. Raymours Furniture Co., Inc.*,
96 F. Supp. 3d 71 (S.D.N.Y. 2015).....................................................................................4

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
991 F.2d 42 (2d Cir. 1993).................................................................................................5

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004)........................................................................................... 5-6

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010).............................................................................................................9

*Revis v. Schwartz*,
192 A.D.3d 127 (2d Dep't 2020),
*aff'd*, 38 N.Y.3d 939 (2022)..............................................................................................10

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
490 U.S. 477 (1989)..........................................................................................................11

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019)...............................................................................................7

*Sultan v. Coinbase, Inc.*,
354 F. Supp. 3d 156 (E.D.N.Y. 2019) ...............................................................................7

*United States v. Konn*,
634 F. App'x 818 (2d Cir. 2015) .......................................................................................4

*Wu v. Uber Techs., Inc*,
No. 33694/2020E, 2022 WL 17826816 (Sup. Ct. Bronx Cnty. Dec. 20, 2022)....................... 4, 6-7

**Rules & Statutes**

9 U.S.C. § 2.......................................................................................................................4

9 U.S.C. § 3.....................................................................................................................11

Defendant Gemini Trust Company, LLC ("Gemini") submits this memorandum of law in support of its motion to compel arbitration and stay claims brought by Plaintiff Tobias Moeller-Bertram ("Plaintiff") pending the outcome of arbitration.

## INTRODUCTION

Gemini offers an online platform for buying, selling, transferring, and storing cryptocurrencies. Plaintiff is a user of Gemini's platform. Plaintiff is also a participant in the Earn Program—a voluntary program available to Gemini users—through which Plaintiff chose to lend digital assets held on Gemini's platform to non-party Genesis Global Capital, LLC ("Genesis") in exchange for earning interest on the loaned assets. Due to events beyond Gemini's control, Genesis—which recently filed for bankruptcy—has refused to return the assets loaned by Plaintiff, resulting in Plaintiff filing this suit against Gemini and Genesis' affiliated company Digital Currency Group, Inc.

Gemini has strong defenses to Plaintiff's claims. But this motion does not involve the merits of Plaintiff's claims or lack thereof. Rather, it presents a threshold procedural issue: Plaintiff cannot bring his claims in this Court because he agreed to arbitrate them. To become a Gemini account user, and every time he logged in to Gemini's website to access his account, Plaintiff was required to indicate his acceptance of the Gemini User Agreement (the "User Agreement"). In that User Agreement, Plaintiff agreed to arbitrate "*any controversy, claim, or dispute arising out of or relating to this User Agreement or [Plaintiff's] relationship with Gemini . . . .*" The law requires Plaintiff to honor his contractual obligations. The Court should compel arbitration of Plaintiff's claims and stay this action until the arbitration concludes.

FACTS

A.  **Overview**

Gemini offers an online platform for buying, selling, transferring, and storing cryptocurrencies.  Decl. ¶ 3.[1]  Tyler and Cameron Winklevoss founded Gemini in 2014.  Compl. ¶ 15.  From February 1, 2021 until November 16, 2022, Gemini offered a lending program in which registered Gemini users could elect to participate (the "Earn Program").  Decl. ¶ 4; Compl. ¶ 20.  Through the Earn Program, participants such as Plaintiff were able to make an independent, purely voluntary decision to lend digital assets (i.e., cryptocurrency) to Genesis in exchange for payment of interest.  Decl. ¶ 4; *see also* Compl. ¶ 19.

B.  **Agreements Governing the Earn Program**

To register an account with Gemini and participate in the Earn Program, Plaintiff registered as a Gemini user and created a Gemini account on July 8, 2020, at 2:28:31 AM. EDT.  Decl. ¶¶ 5-7, 9.  To do so, Plaintiff had to use Gemini's account registration webpage.  *Id*. ¶ 7; Ex. 1.  On this webpage, Plaintiff was prompted and required to enter his full name, email address, and password.  *Id*.  Before proceeding any further, Plaintiff had to affirmatively check a separate box next to the language stating: "By creating this account, you agree to our User Agreement and Privacy Policy."  *Id*.  The underlined phrase "User Agreement" hyperlinked to the full text of the User Agreement in place at the time.  *Id*.  It was impossible for an individual to create a new Gemini account without checking the box expressly indicating consent to the User Agreement.  Decl. ¶ 8.

The User Agreement terms are updated from time to time, including on December 14,

---

[1]  Declaration of Travis Freeman.  Cites to Exhibits 1 through 4 refer to the exhibits attached to the Declaration.

2022. *Id.* ¶ 11; Ex. 2. On December 15, 2022 at 6:26 p.m. ET, Gemini sent an email to all registered users explaining that the User Agreement changed and encouraging Gemini users to review the amended User Agreement. *Id.* ¶ 12; Ex. 3. The underlined phrase "User Agreement" hyperlinked to the full text of the amended User Agreement on Gemini's website so the individual could review it without logging into his or her account. *Id.* If the user chose to log into his Gemini account after December 14, 2022, the "Sign In" page instructed as follows: "Our User Agreement has changed, including the Dispute Resolution provision. By clicking "Sign In" below, I agree to Gemini's USER AGREEMENT and PRIVACY POLICY." *Id.* ¶ 13; Ex. 4.

Plaintiff logged on to his Gemini account and thus accepted the amended User Agreement on December 18, 2022 at 1:40:57 AM EST. Decl. ¶ 14. The User Agreement has at all times included and continues to include an agreement to arbitrate "*any controversy, claim, or dispute arising out of or relating to this User Agreement or [Plaintiff's] relationship with Gemini . . . .*" Ex. 2 at 107–114 (emphasis added); Decl. ¶ 10.

## STANDARD OF REVIEW

The FAA embodies a "liberal federal policy in favor of arbitration." *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 488 (2d Cir. 2013). This "'liberal federal policy favoring arbitration agreements'" applies "'notwithstanding any state substantive or procedural policies to the contrary.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Consistent with this policy, there is a presumption of arbitrability, meaning that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996) (citation omitted).

Thus, "'[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Hudson Specialty Ins. Co v. N.J. Transit Corp.*, No. 15-cv-89

3

(ER), 2015 WL 3542548, at *2 (S.D.N.Y. June 5, 2015) (quoting *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 91 (2000)). In determining whether to compel arbitration, district courts apply a standard similar to the one applied in a motion for summary judgment, and must view the facts in the light most favorable to the nonmovant, *i.e.*, the party seeking to oppose arbitration. *Patterson v. Raymours Furniture Co., Inc.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015) (citations omitted).

## ARGUMENT

Plaintiff agreed to arbitrate "any" claim arising out of his relationship with Gemini. The Court should hold Plaintiff to his agreement and compel arbitration, as it is authorized to do by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA").

**I.     The FAA Requires Enforcement of the Parties' Agreement to Arbitrate.**

The FAA governs any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Here, both criteria are met: (i) the arbitration agreements are in writing, and (ii) contracts related to the use of an online crypto-trading platform plainly involve interstate commerce, because "there can be no question that the Internet is a channel and instrumentality of interstate commerce." *United States v. Konn*, 634 F. App'x 818, 821 (2d Cir. 2015); *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (FAA applies to Lyft's online Terms of Use Agreement that contains an arbitration clause).

Under the FAA, Plaintiff's arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC*, 563 U.S. at 344. As stated, this "'liberal federal policy favoring arbitration agreements'" applies "'notwithstanding any state substantive or procedural

4

policies to the contrary.'" *Id.* at 346 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). Here, no grounds exist in law or in equity for the revocation of the arbitration agreement.

## II.     Plaintiff Consented to Arbitration in the User Agreement.

To determine whether a valid arbitration agreement has been formed, court must "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). But only "generally applicable" contract rules apply; state-law rules that "discriminat[e]" against or "disfavor[]" arbitration agreements are preempted by the FAA. *Kindred Nursing Ctrs. LP v. Clark*, 581 U.S. 246, 251 (2017); *see e.g.*, *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) (finding that the applicable New York rule, which required a movant to demonstrate the existence of an "express, unequivocal agreement" to arbitrate, was preempted by the FAA because it improperly increased the burden on the movant).

Plaintiff chose to file this lawsuit in a New York forum. Compl. ¶ 13. Gemini is headquartered in New York. *Id.* ¶ 15. The User Agreement contains a New York choice of law clause. Ex. 2 at 107. Therefore, except to the extent it is preempted by the FAA, New York law applies to determine whether an agreement to arbitrate exists between Plaintiff and Gemini. Other issues related to arbitration, if any, should be governed by the FAA. Both laws require arbitration in this case.

As detailed above, Plaintiff agreed to the User Agreement when he first became a Gemini user in July of 2020 and then agreed again when he consented to the terms of the amended User Agreement on December 18, 2022. Decl. ¶¶ 6, 9-10, 14; Ex. 2. These agreements were formed online, but this does not affect their validity. The rules of contract formation are no different when an individual engages in a transaction on an electronic device or through the Internet. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (explaining that the Internet

5

"has not fundamentally changed the principles of contract"). Just as with any type of contract, the central issue is still whether mutual assent existed between the contracting parties. *See id.*; *see also Maffea v. Ippolito*, 247 A.D.2d 366, 367 (2d Dep't 1998) ("The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract.").

"[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010). New York courts thus consistently recognize the validity of various types of online agreements including (i) *clickwrap agreements*, which "require a user to affirmatively click a box on the website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website," and (ii) *sign-in-wrap agreements*, in which "the website is designed so that a user is notified of the existence and applicability of the site's 'terms of use' when proceeding through the website's sign-in or login process." *Wu v. Uber Techs., Inc*, No. 33694/2020E, 2022 WL 17826816, at *21 (Sup. Ct. Bronx Cnty. Dec. 20, 2022) (describing the various types of agreements, specifically a clickwrap agreement); *see also Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020) (same concerning sign-in-wrap agreements).

Although an agreement's category is not necessarily dispositive, these two types of contracts are consistently upheld so long as the user is provided with objectively reasonable notice of the contract terms. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 71 (2d Cir. 2017) (collecting cases and noting that "[c]ourts routinely uphold" agreements "which require users to click an 'I agree' box after being presented with a list of terms and conditions of use"); *Wu*, 2022 WL 17826816 at

\*22 (compelling arbitration based on amended terms of use for Uber's ride-sharing smartphone application); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 159, 162 (E.D.N.Y. 2019) (enforcing an arbitration clause in a cryptocurrency exchange's website user agreement).

Whether inquiry notice exists is examined from the perspective of "a reasonably prudent smartphone or Internet user.'" *Feld*, 442 F. Supp. 3d at 830 (quoting *Meyer*, 868 F.3d at 77). "That the contents of the [the agreement] do not appear on the screen or that [the movant] does not require a 'user to actually examine the terms before assenting' does not change the analysis." *Id.* at 831 (quoting *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837-38 (S.D.N.Y. 2012)). Rather, to evaluate whether notice exists, courts are directed to "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019) (citation omitted).

Courts have routinely enforced agreements formed online in cases with user login or registration pages analogous to those at issue in this case. *See, e.g.*, *Meyer*, 868 F.3d at 75, 79 (finding that the disclosure on a smartphone screen that "[b]y creating an Uber Account you agree to the [hyperlinked] Terms of Service" was sufficient to create a binding arbitration agreement); *Feld*, 442 F. Supp. 3d at 827 (enforcing an arbitration clause in website's terms of use that were hyperlinked and required a user to click a button indicating consent); *Hidalgo v. Amateur Athletic Union of U.S., Inc.*, 468 F. Supp. 3d 646, 656-59 (S.D.N.Y. 2020) (same); *Fteja.*, 841 F. Supp. 2d at 838-41 (same, except that the court enforced a forum selection clause in the website's terms of service); *Wu*, 2022 WL 17826816 at \*22 (enforcing an arbitration agreement within online Terms of Use which were hyperlinked and plaintiff clicked "Confirm" button).

The facts in this case are no different from other cases where arbitration was required. At

7

all times, the registration and login pages on Gemini's website notified users that, by creating an account with Gemini or logging into the account, the users "agree to Gemini's <u>USER AGREEMENT</u>." *Id.* ¶¶ 7-8, 13; Exs. 1, 4 (underlining in original). This disclosure is in the same or larger font as the rest of the webpage and uses a conspicuous black or blue (in case of hyperlinks) font against white background. *Id.* The pages are uncluttered and none of the relevant text or buttons are obscured or hidden on the page. *Id.* Plaintiff logged in to Gemini's website on December 18, 2022 at 1:40:57 AM EDT. *Id.* ¶ 14. When doing so, he necessarily accepted the terms of the hyperlinked User Agreement, as amended, including its arbitration clause. *Id.* ¶¶ 13-14. Plaintiff is therefore bound by the agreement to arbitrate "any controversy, claim, or dispute arising out of or relating to this User Agreement or [Plaintiff's] relationship with Gemini . . . ." Ex. 2 at 107.

Indeed, at least two courts have already compelled arbitration based on Gemini's User Agreement and account registration process. *See Griffin v. Gemini Trust Company,* No. 22-cv-1747-CRB (N.D. Cal. Jul. 29, 2022) (granting Gemini's motion to compel arbitration and rejecting all contract formation challenges), attached as **Exhibit A**; *Ciceron v. Gemini Trust Company, LLC,* Index No. 652075/2021 (Sup. Ct. N.Y. Cnty. Dec. 3, 2021) (granting Gemini's motion to compel arbitration), attached as **Exhibit B**. Further, upon review of Gemini's pre-motion request and plaintiff's opposition, this Court recently allowed Gemini to proceed with its motion to compel arbitration of another Earn user's claims. *Picha v. Gemini Trust Company LLC*, No. 22-cv-10922, Order [ECF 42] (S.D.N.Y. March 2, 2023) (Buchwald, J.). Further, faced with Gemini's motion to enforce the arbitration clause within its User Agreement, two other plaintiffs recently chose not to oppose Gemini's motions. *IRA Financial Trust v. Gemini Trust Company, LLC*, No. 1:22-cv-04672, Proposed Order Staying Proceedings [ECF 25] (S.D.N.Y. Aug. 18, 2022) (agreeing to

arbitrate the day a response to Gemini's motion to compel arbitration was due); *Berdugo v. Gemini Trust Company, LLC*, No. 0:23cv60057, Notice of Voluntary Dismissal [ECF 16] (S.D. Fla. Feb. 22, 2023) (dismissing putative class action arising from the Earn program the day before the response to Gemini's motion to compel arbitration was due).

Here, Plaintiff cannot reasonably dispute that he entered into a binding arbitration agreement and the Court should compel arbitration.

### III.   The Parties Have Delegated Issues of Scope and Arbitrability to the Arbitrator.

The Court should not decide whether Plaintiff's allegations fall within the scope of the User Agreement's arbitration clause or any other issue beyond confirming that the parties agreed to arbitration. The United States Supreme Court has repeatedly held that "if a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, *a court may not decide the arbitrability issue*." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (emphasis added); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Accordingly, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 139 S. Ct. at 530. And the Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also, e.g.*, *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (enforcing agreement to delegate questions of "existence, scope or validity" of the agreement to the arbitrator); *accord Hidalgo.*, 468 F. Supp.

9

3d at 661 (enforcing delegation clause). Thus, where an arbitration agreement includes a delegation clause, "neither the Supreme Court, nor this Court, nor *any* court, has the authority to decide whether and to what extent these parties' disputes are arbitrable." *Revis v. Schwartz*, 192 A.D.3d 127, 141 (2d Dep't 2020) (recognizing that it would be error to inquire into the scope of an arbitration agreement that includes a delegation clause), *aff'd*, 38 N.Y.3d 939 (2022) (emphasis in original).

The User Agreement expressly provides that "*that any dispute about the scope of this User Agreement to arbitrate and/or the arbitrability of any particular dispute shall be resolved in arbitration in accordance with this section*." Ex. 2 at 107 (emphasis added). This language is clear and unmistakable evidence of delegation. *See, e.g.*, *Bar-Ayal v. Time Warner Cable Inc.*, No. 03-cv-99059-KMW, 2006 WL 2990032, at *7-8 (S.D.N.Y. Oct. 16, 2006) (finding that a clause providing that "'the arbitrability of disputes shall be determined by the arbitrator' . . . constitutes sufficiently clear and unmistakable evidence that the parties intended to have issues of arbitrability decided by the arbitrator") (quotation in original). As a result of this delegation clause in the User Agreement, the Court need not go further to consider whether the particular claims alleged in this action fall within the scope of the clause and should compel arbitration.

IV. **Plaintiff's Claims Against Gemini Fall Within the Scope of the Arbitration Agreement.**

Although the Court should not reach this issue in light of the User Agreement's delegation clause, Plaintiff's claims do fall within the scope of the arbitration clause in the User Agreement. The User Agreement broadly provides that "**any controversy, claim, or dispute arising out of or relating to this User Agreement or your relationship with Gemini—past, present, or future—shall be settled solely and exclusively by binding arbitration**…." Ex. 2 at 107 (emphasis added).

10

In the Complaint, Plaintiff alleges that Gemini promoted, offered, solicited offers to buy, and/or sold unregistered securities using the instrumentalities of interstate commerce through the Earn Program after failing to file a registration statement. Compl. ¶¶ 99-104. The Earn Program was an optional program, only available to existing users of the Gemini platform. Decl. ¶ 4. As noted, a person could not become a user of the Gemini platform without first accepting the User Agreement, and each user had to accept the User Agreement as a part of logging into Gemini's website. *Id.* ¶¶ 3, 7, 13.

As such, Plaintiff's claims against Gemini necessarily arise out of or relate to his "relationship with Gemini" and the User Agreement that governed Plaintiff's access to and use of the entire Gemini platform, including his ability to participate in the Earn Program. In short, Plaintiff's claims "touch matters covered" by the User Agreement and are therefore arbitrable. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985); *see also Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 485-86 (1989) (holding that claims brought under the Securities Act of 1933 were arbitrable).

**V.     This Action Should Be Stayed Pending Arbitration of Plaintiffs' Claims.**

When, as here, the FAA governs an arbitration provision that covers Plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay those claims. *See* 9 U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (explaining this Code section). Accordingly, Gemini moves to stay this case until the conclusion of the arbitration.

## CONCLUSION

For the foregoing reasons, Gemini Trust Company, LLC respectfully requests that the Court enter an order (i) compelling Plaintiff to arbitrate his claims in accordance with the applicable arbitration agreement; and (ii) staying this action pending the outcome of arbitration.

**REQUEST FOR ORAL ARGUMENT**

Gemini respectfully requests an oral argument on its motion.

Dated: New York, New York
March 16, 2023

                                                                               JFB LEGAL, PLLC

                                                                               By /s/ John F. Baughman

                                                                                  John F. Baughman
                                                                                  Maryia Y. Jones
                                                                                  299 Broadway – Suite 1816
                                                                                  New York, NY 10007
                                                                                  (212) 548-3212

                                                            *Attorneys for Gemini Trust Company, LLC*