**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOBIAS MOELLER-BERTRAM, individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>) Case No. 1:23-cv-02027 |
| Plaintiff, | ) <br>) Hon. Lewis J. Liman |
| v. | )<br>) |
| GEMINI TRUST COMPANY, LLC; and DIGITAL CURRENCY GROUP, INC. | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO REMAND TO STATE COURT**

**TABLE OF CONTENTS**

Page No.

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 3

I.  THE REMOVING PARTY BEARS THE BURDEN OF OVERCOMING THE GENERAL PRESUMPTION AGAINST REMOVAL ......................................................... 3

II. SECTION 22(A) OF THE SECURITIES ACT EXPRESSLY PROHIBITS REMOVAL OF THIS ACTION ................................................................................................................ 4

III. SECTION 22(A)'S PROHIBITION ON REMOVAL OVERRIDES THE BANKRUPTCY REMOVAL PROVISION UNDER SECTION 1452 ............................... 6

    A. Section 22(a) Is More Specific Than The Bankruptcy Removal in Section 1452(a) ............................................................................................................................ 7

    B. Section 22(a) Does Not Unduly Interfere With The Bankruptcy Code .................. 8

    C. As The More Recently Amended Statute, Section 22(a) Should Be Given Effect Over Section 1452(a) ................................................................................................ 9

    D. Section 22(a)'s Removal Prohibition Does Not Render The Exception To The General Removal Prohibition In Section 1441 Superfluous ........................ 11

IV. SECTION 22(A)'S PROHIBITION ON REMOVAL OVERRIDES THE REMOVAL PROVISION UNDER CAFA ....................................................................... 13

CONCLUSION ........................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page No(s).**

**CASES**

*Cal. Pub. Employees Ret. Sys. v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004) ................................................................................................ passim

*Cyan, Inc. v. Beaver Cty. Employees Retirement Fund*,
  138 S.Ct. 1061 (2018) ....................................................................................................... passim

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014) ..................................................................................................................... 3

*DiTolla v. Doral Dental IPA of N.Y., LLC*,
  469 F.3d 271 (2d Cir. 2006) ...................................................................................................... 4

*Harraz v. EgyptAir Airlines Co.*,
  2019 U.S. Dist. LEXIS 212157 (S.D.N.Y. Dec. 9, 2019) .......................................................... 3

*Ill. Mun. Ret. Fund v. Citigroup, Inc.*,
  2003 U.S. Dist LEXIS 16255 (S.D. Ill. Sep. 9, 2003) ............................................................... 8

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  488 F.3d 112, 124 (2d Cir. 2007) .............................................................................................. 4

*Luther v. Countrywide Home Loans Servicing LP*,
  533 F.3d 1031 (9th Cir. 2008) ....................................................................................... 8, 13, 14

*Owen v. Elastos Found.*,
  438 F. Supp. 3d 187 (S.D.N.Y. 2020) ..................................................................................... 14

*Radzanower v. Touche Ross & Co.*,
  426 U.S. 148 (1976) ....................................................................................................... 7, 13, 14

*Riverbay Corp. v. SEIU, Local 32BJ*,
  2023 U.S. Dist. LEXIS 28556 (S.D.N.Y. Feb. 21, 2023) .......................................................... 3

*Tenn. Consol. Ret. Sys. v. Citigroup, Inc.*,
  2004 U.S. Dist. LEXIS 24043 (M.D. Tenn. Oct. 12, 2004) ................................................. 8, 11

*Vanbecelaere v. YayYo, Inc.*,
  2020 U.S. Dist. LEXIS 163680 (C.D. Cal. Sep. 8, 2020) ................................................. 13, 14

**STATUTES**

15 U.S.C. § 77p ................................................................................................................................ 5

15 U.S.C. § 77v ............................................................................................................... 1, 5, 9, 10

28 U.S.C. § 1334 ....................................................................................................................... 6

28 U.S.C. § 1452 ....................................................................................................................... 6

28 U.S.C. § 1453 ..................................................................................................................... 13

Plaintiff Tobias Moeller-Bertram ("Plaintiff"), through his undersigned counsel, submits this memorandum of law in support of his motion, pursuant to 28 U.S.C. § 1447(c), to remand this action to the New York State Supreme Court, New York County.

## **PRELIMINARY STATEMENT**

This action must be remanded to the New York State Supreme Court, New York County. Plaintiff alleges claims against Defendants Gemini Trust Company, LLC ("Gemini") and Digital Currency Group, Inc. ("DCG") solely for violations of the Securities Act of 1933 ("Securities Act" or "1933 Act"). Pursuant to Section 22(a) of the Securities Act, "[e]xcept as provided in section 77p(c) of this title [Section 16(c)], no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). Here, Defendant DCG purported to remove this action pursuant to 28 U.S.C. § 1452(a) ("Section 1452") (based on this action being "related to" a bankruptcy proceeding involving a non-party to this action that is pending in this District) and the removal provision under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453 ("Section 1453") (removal of class actions). Regardless of the basis, removal was improper and in violation of Section 22(a)'s removal ban.

In *Cyan, Inc. v. Beaver Cty. Employees Retirement Fund*, 138 S.Ct. 1061 (2018), the Supreme Court affirmed the primacy of Section 22(a). In *Cyan*, the Supreme Court held that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") "did nothing to strip state courts of their longstanding jurisdiction to adjudicate class actions alleging only 1933 Act violations. Neither did SLUSA authorize removing such suits from state to federal court." *Id.* at 1078. The Supreme Court based its decision on the plain language of Section 22(a), as amended by SLUSA. The reasoning of the Supreme Court in *Cyan* applies with equal force to Section 1452 and Section 1453. Neither removal provision can trump the clear and plain language of Section 22(a). Indeed, it would have been odd for the Supreme Court to devote so much analysis to the primacy of Section

1

22(a), if defendants could so easily sidestep Section 22(a) by invoking Section 1452 or Section 1453. Notably, the defendants in *Cyan* could have easily, just like DCG here, invoked CAFA, but did not do so.

For the reasons set forth in more detail below, the Court should remand this action to the New York State Supreme Court.

## BACKGROUND

Plaintiff commenced this action in the New York State Supreme Court, New York County, under the caption *Tobias Moeller-Bertram v. Gemini Trust Company, LLC, et al.*, Index No. 151710/2023, against Defendants Gemini and DCG on behalf of all investors who invested in securities offered by Gemini through the so-called Gemini Earn program conducted between February 2021 and November 2022. ¶ 1.[1] Plaintiff alleges that Defendants engaged in an unregistered offer and sale of securities to U.S. retail investors in violation of the Securities Act. Specifically, Plaintiff brings claims for violations of Sections 5, 12(a)(1) and 15 of the Securities Act, 15 U.S.C. §§ 77e, 77l(a)(1), 77o. ¶¶ 3, 99-112.

Plaintiff alleges that under the Gemini Earn program, investors tendered crypto assets to non-party Genesis Global Capital, LLC ("Genesis"). In exchange, Genesis promised to pay interest on those assets to investors. Through the unregistered offering, Defendants raised billions of dollars of crypto assets, principally from U.S. retail investors. ¶ 3. Genesis was the issuer and entity that received, deployed and paid interest on investors' assets. Genesis pooled the crypto assets from the Gemini Earn program with assets from other investors and primarily lent the crypto assets to institutional counterparties. ¶ 5. Genesis earned revenue by lending the crypto assets at a higher

---

[1] "¶ [No.]" refers to the corresponding paragraph number of Plaintiff's Complaint for Violation of the Federal Securities, filed on February 22, 2023 in the New York State Supreme Court, New York County, which is attached as Exhibit 1 to the Declaration of JooYun Kim submitted in support of Plaintiff's Motion to Remand.

rate than it paid to the Gemini Earn investors and other investors. Genesis held approximately $900 million in investor assets from approximately 340,000 Gemini Earn investors. ¶ 9.

In addition to lending crypto assets to institutional borrowers, Genesis could also loan the crypto assets to related parties, including its parent company, Defendant DCG. In connection with a troubled investment product called Grayscale Bitcoin Trust offered by another of DCG's subsidiaries, Grayscale Investments, LLC, Defendant DCG caused Genesis to execute a number of non-arm's length and commercially unreasonable loans. ¶¶ 74-83.

In November 2022, Genesis unilaterally announced that it would not allow hundreds of thousands of retail investors to withdraw their crypto assets from the Gemini Earn program because of liquidity issues following volatility in the crypto asset market. On January 20, 2023, Genesis filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. ¶ 9.

On March 9, 2023, Defendant DCG removed the action to this Court. Dkt. No. 1.

## ARGUMENT

### I. THE REMOVING PARTY BEARS THE BURDEN OF OVERCOMING THE GENERAL PRESUMPTION AGAINST REMOVAL

"As a general matter, 'there is a presumption against removal, and uncertainties tend to weigh in favor of remand.'" *Riverbay Corp. v. SEIU, Local 32BJ*, 2023 U.S. Dist. LEXIS 28556, at *8 (S.D.N.Y. Feb. 21, 2023) (quoting *Harraz v. EgyptAir Airlines Co.*, 2019 U.S. Dist. LEXIS 212157 (S.D.N.Y. Dec. 9, 2019)).[2] Accordingly, "'out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability.'" *Id.*

---

[2] With respect to cases removed under CAFA, the Supreme Court held that no presumption against removal attends cases invoking CAFA and thus, a defendant's notice of removal is required to include only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). However, the Supreme Court was focused on whether removal was adequately pleaded and satisfied the requirements of CAFA. *Dart Cherokee* did not address the issue here of a conflicting non-removal provision such as Section 22(a).

(quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)). The party seeking removal to federal court bears the burden of proving that such removal is proper, even where removal is sought pursuant to the bankruptcy removal provisions or pursuant to the CAFA removal provision. *See Cal. Pub. Employees Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) ("the defendant bears the burden of demonstrating the propriety of removal" pursuant to the bankruptcy removal statute) (internal quotations and citations omitted); *DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 275 (2d Cir. 2006) (CAFA did not change the rule that "the party asserting federal jurisdiction [bears] the burden of proving that the case was properly in federal court") (cleaned up).

DCG cannot meet this burden as Section 22(a) of the Securities Act explicitly bars removal of this action.

## II.   SECTION 22(a) OF THE SECURITIES ACT EXPRESSLY PROHIBITS REMOVAL OF THIS ACTION

The Securities Act expressly prohibits removal from state to federal court of cases that only assert Securities Act claims. Specifically, Section 22(a) of the Securities Act states in relevant part:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 77p of this title [Section 16] with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by this title.
>
> …
>
> Except as provided in section 77p(c) of this title [Section 16(c)], **no case** arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

15 U.S.C. § 77v(a) (emphasis added). In *Cyan*, the Supreme Court affirmed that actions (including class actions) alleging only claims under the Securities Act may be brought in state court and are expressly non-removable. *Cyan,* 138 S.Ct. 1061.

In *Cyan*, the Supreme Court revisited Section 22(a)'s removal prohibition and held that the passage of SLUSA did nothing to change a state court's jurisdiction over Securities Act claims, including when brought in class actions. *Cyan*, 138 S.Ct. at 1069. Nothing in the legislative history of SLUSA divested state courts of their jurisdiction over Securities Act claims. *Id.* at 1075. The Supreme Court also held that SLUSA does not "authorize removing such suits from state to federal courts." *Id.* at 1078. In so holding, the Supreme Court explained the primacy of Section 22(a): "When Congress passed SLUSA, state courts had for 65 years adjudicated all manner of 1933 Act cases, including class actions. Indeed, defendants could not even remove those cases to federal court, as schemes of concurrent jurisdiction almost always allow. State courts thus had as much or more power over the 1933 Act's enforcement as over any federal statute's." *Id.* at 1071 (internal citation omitted).

The narrow exception embedded in Section 22(a) (*i.e.*, the exception as set forth in Section 16) states that "[n]o covered class action based upon the statutory or common law of any State" and alleging dishonest practices with respect to a nationally traded security's purchase or sale may be maintained by a private party in any state or federal court. 15 U.S.C. § 77p(b)-(c). Here, Plaintiff's claims are brought only under Sections 5, 12 and 15 of the federal Securities Act, 15 U.S.C. §§ 77e, 77l and 77o, based on allegations that Defendants conducted an unlawful sale of an unregistered security. Plaintiff is not asserting any claim based upon "the statutory or common law of any *State*."

Accordingly, the exception to Section 22(a)'s express prohibition on removal does not apply here and this action should be remanded to the New York State Supreme Court.

### III. SECTION 22(a)'s PROHIBITION ON REMOVAL OVERRIDES THE BANKRUPTCY REMOVAL PROVISION UNDER SECTION 1452

As their first basis for removal, Defendant DCG relied upon the bankruptcy removal provisions contained in 28 U.S.C. § 1452 and 28 U.S.C. § 1334. Dkt. No. 1. Section 1452 provides in relevant part: "A party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334 in turn provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

The bankruptcy removal provisions directly conflict with the removal prohibition in Section 22(a) of the Securities Act. *See WorldCom, Inc.*, 368 F.3d at 90 (addressing "a direct conflict between two unambiguous statutes – Section 22(a) [ ], which bars removal of individual Securities Act claims, and 28 U.S.C. § 1452(a), which permits removal of claims that are 'related to' a bankruptcy case") (internal footnote omitted). In *WorldCom*, the Second Circuit noted that "[t]his is a close question" but ultimately resolved that conflict in favor of the bankruptcy removal provision and held that "generally nonremovable claims brought within the Securities Act of 1933 may be removed to federal court if they come under the purview of 28 U.S.C. § 1452(a), which confers federal jurisdiction over claims that are related to a bankruptcy case." *Id.* at 90, 108. However, in light of *Cyan*, the Second Circuit's decision in *WorldCom* is no longer good law.

The *WorldCom* court relied on several different principles of statutory construction and held that, because of the totality of these different factors, the bankruptcy removal provisions trumped Section 22(a). However, the reasoning underlying these different factors is inapplicable, especially because of Section 22(a)'s primacy as reaffirmed in *Cyan*.

6

### A. Section 22(a) Is More Specific Than The Bankruptcy Removal in Section 1452(a)

First, the *WorldCom* court relied on the statutory construction principles set forth by the Supreme Court in *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976), which provides that "[w]here there is *no clear intention* otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Id.* at 153 (quoted in *WorldCom*, 368 F.3d at 101) (emphasis added).

In *Radzanower*, the Supreme Court compared the venue provision of the Securities Exchange Act of 1934, which allows lawsuits to be brought in any district where the defendant transacts business or may be found, or where the alleged violation occurred, with the venue provision of the National Bank Act, which restricts lawsuits against a national banking association to the district where the association is established. 426 U.S. at 150. The Supreme Court held that when the "narrow venue provisions of the National Bank Act" were enacted, Congress "was focusing on the particularized problems of national banks that might be sued in the state or federal courts. When, 70 years later, Congress enacted the Securities Exchange Act, its focus was on the objective of promoting fair dealing in the securities market, and it enacted a general venue provision applicable to the broad universe of potential defendants subject to the prohibitions of that Act." *Id.* at 153-54. Accordingly, the Supreme Court held that "unless a clear intention otherwise can be discerned, the principle of statutory construction … counsels that the specific venue provisions of [the National Bank Act] are applicable to the [defendant]." *Id.* at 154 (internal quotation marks and citation omitted).

The Second Circuit in *WorldCom* reasoned that Section 22(a) is not more specific than Section 1452(a) because both Section 22(a) and Section 1452(a) apply to a defined class of claims, and not to a defined group of litigants as in the National Bank Act's venue provision. *WorldCom*,

368 F.3d at 102. The Second Circuit also found that Section 22(a) does not cover only a subset of claims falling under Section 1452(a) and vice versa; thus, neither was more specific than the other. *Id.* 102 ("just as Section 1452(a) applies to many claims that are not brought under the 1933 Act, Section 22(a) applies to many claims that are not 'related to' a bankruptcy").

The Second Circuit's conclusion ignores that Section 22(a) applies to "a particular and well defined group of Plaintiffs that Congress consciously selected after a study of state and federal securities class actions." *Tenn. Consol. Ret. Sys. v. Citigroup, Inc.*, 2004 U.S. Dist. LEXIS 24043, at *13 (M.D. Tenn. Oct. 12, 2004); *Ill. Mun. Ret. Fund v. Citigroup, Inc.*, 2003 U.S. Dist LEXIS 16255, at *6 (S.D. Ill. Sep. 9, 2003) (finding "that the rules of statutory construction require Section 22(a) to control over the more general provisions of 28 U.S.C. §§ 1334(b) and 1452"); *cf. Luther v. Countrywide Home Loans Servicing LP,* 533 F.3d 1031, 1034 (9th Cir. 2008) (finding that compared to the removal provision in the CAFA, "the Securities Act of 1933 is the more specific statute; it applies to the narrow subject of securities cases and § 22(a) more precisely applies only to claims arising under the Securities Act of 1933. CAFA, on the other hand, applies to a 'generalized spectrum' of class actions.") (citation omitted).

Moreover, Section 22(a) covers claims brought under the Securities Act only and does not involve claims that are separate from, but are possibly "related" to, the Securities Act claims. In contrast, Section 1452 does cover extraneous claims that are not directly part of a bankruptcy, thereby capturing a broader set of claims. Accordingly, the Second Circuit was incorrect in holding that Section 22(a) is not more specific than Section 1452. As the more specific statutory provision, Section 22(a) should be given effect over Section 1452.

### B. Section 22(a) Does Not Unduly Interfere With The Bankruptcy Code

Next, the Second Circuit in *WorldCom* found that even if Section 22(a) were more specific, because giving effect to Section 22(a) would "unduly interfere" with the Bankruptcy Code, "it

8

would not necessarily control." *WorldCom*, 368 F.3d at 103-04. However, Section 1452(a) similarly interferes with the Section 22(a) mandate that "no case arising under [the Securities Act] … shall be removed to any court of the United States." 15 U.S.C. § 77v(a). As the Supreme Court explained, "the background rule of [Section 22(a)]—in place since the 1933 Act's passage—gives state courts concurrent jurisdiction over all suits brought to enforce any liability of duty created by that statute." *Cyan*, 138 S.Ct. at 1069 (internal quotation marks and citation omitted). This longstanding Congressional granting of jurisdiction to the state courts over claims asserted under the 1933 Act is undermined if cases that fall under Section 1452(a) may be removed, notwithstanding the removal ban in Section 22(a).

### C. As The More Recently Amended Statute, Section 22(a) Should Be Given Effect Over Section 1452(a)

Third, the Second Circuit held that, under the "rule of recency," an irreconcilable conflict between two statutes is resolved by giving effect to the most recently enacted statute because it is the most recent indication of congressional intent, and that this favored Section 1452(a) over Section 22(a). *WorldCom*, 368 F.3d at 104-05. Even though Section 22(a) is in fact the more recently amended provision under SLUSA, the Second Circuit reasoned that Section 22(a) was *not* the most recent indication of Congressional intent with respect to the *claims asserted in WorldCom*. The Second Circuit explained that SLUSA was intended to "merely expand[ ] federal jurisdiction over *class actions*," but that "nothing in the text or legislative history of SLUSA indicates that Congress intended to alter the jurisdictional scheme applicable to *individual* actions under the 1933 Act." *Id.* at 104-05 (emphasis added). According to the Second Circuit, because the plaintiffs in *WorldCom* brought their claims *individually*, and not as a *class action*, the SLUSA amendments to Section 22(a) did not apply to the plaintiffs and was not the most recent for purposes of the "rule of recency."

9

The above reasoning is clearly inapplicable here. This lawsuit *is* a class action, and not an individual action. In *Cyan*, the Supreme Court noted that, after the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Congress enacted SLUSA to "prevent plaintiffs from circumventing the [PSLRA]" and bringing class actions under state law. *Cyan*, 138 S.Ct. at 1067. Accordingly, SLUSA was concerned with the very type of case and issue presented here, namely, in which forum a securities *class action* could be maintained. Thus, as it applies to this purported class action, Section 22(a) (which was amended by SLUSA in 1998) *is* the most recent statute vis-à-vis Section 1452(a), and thus prevails over that provision.

Despite acknowledging that SLUSA "left the 1933 Act's nonremoval provision intact," (*WorldCom*, 368 F.3d at 105), the Second Circuit further reasoned that, because SLUSA was silent "with respect to individual Securities Act claims that are related to a bankruptcy case, Congress did not alter any preexisting rule when it enacted SLUSA." *Id.*, 368 F.3d at 105 (citation omitted). Apart from the fact that this case is a class action and not an individual action (as explained above), Congress's silence with respect to the bankruptcy removal provision goes the other way, and supports resolving the conflict between Section 22(a) and Section 1452(a) in favor of the Securities Act's removal ban. That is because, in amending Section 22(a), SLUSA added express language to Section 22(a) to specifically exclude the actions described in Section 16(c) of the Securities Act from removal, while *not* mentioning bankruptcy removal: "*Except as provided in section 77p(c) of this title [Section 16(c)],* no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a) (italics noting new material pursuant to SLUSA); *see also Cyan*, 138 S.Ct. at 1068. As the court in *Tenn. Consol.* explained, Congress explicitly set forth an exception to the removal prohibition in Section 22(a) "with full knowledge of the Bankruptcy removal statute, yet did nothing to textually provide for removability of cases … 'related to' bankruptcy claims." 2004 U.S. Dist.

10

LEXIS 24043, at *16-17. Indeed, in light of the Supreme Court's decision in *Cyan*, it is clear that Congress intended to preserve the removal ban for actions (including class actions) asserting claims only under the Securities Act despite any conflicting removal provisions. As the Supreme Court explained: "We do not know why Congress declined to require as well that 1933 Act class actions [like actions under the Securities Exchange Act] be brought in federal court; perhaps it was because of the long and unusually pronounced tradition of according authority to state courts over 1933 Act litigation. But in any event, we will not revise that legislative choice …." *Cyan*, 138 S.Ct. at 1073 (citations omitted).

Accordingly, SLUSA did not merely expand federal jurisdiction with respect to class actions; it also reaffirmed the state court's jurisdiction over all actions asserting only Securities Act claims by adding a narrow exception to the Section 22(a) removal prohibition, but otherwise leaving the remainder of the removal prohibition in place.

### D. Section 22(a)'s Removal Prohibition Does Not Render The Exception To The General Removal Prohibition In Section 1441 Superfluous

Finally, the Second Circuit in *WorldCom* compared Section 1452(a) with the general removal provision in 28 U.S.C. § 1441(a), which permits removal "except as otherwise expressly provided by Act of Congress." The Second Circuit held that the absence of such similar language in Section 1452(a) suggests that, when Section 1452(a) was enacted, Congress did not intend for Section 22(a) and its analogues to bar removal of 'related to' claims." *WorldCom*, 368 F.3d at 106. The Second Circuit reasoned that if Section 22(a) were to prevent removal under both Section 1441(a) and Section 1452(a), the "except as otherwise expressly provided by Act of Congress" language in Section 1441(a) "would be surplusage" and would "serve no apparent purpose." *Id.* The Second Circuit further reasoned that when an anti-removal provision such as Section 1452(a) is invoked, "[i]f removal is being effectuated through a provision that confers *additional* removal

11

jurisdiction, and that provision contains no exception for nonremovable federal claims, the provision should be given full effect." *Id.* at 107 (citation omitted) (emphasis in original). Thus, because Section 1452(a) provides removal jurisdiction in addition to the general removal provision under Section 1441(a), it must be given effect over Section 22(a). To do otherwise would "essentially be pasting the introductory clause of Section 1441(a) … into Section 1452(a)." *Id.*

However, under the Second Circuit's reasoning, the "[e]xcept as provided in section 77p(c) of this title" language in Section 22(a) has a different meaning than what it plainly states. Although the Second Circuit considered it "violence to the statutory scheme" of Section 1452(a) to paste a similar "except" clause onto it as the one in Section 1441(a) (*id.* at 107), under its analysis, the Second Circuit is doing precisely the same thing to Section 22(a). The Second Circuit's interpretation of Section 22(a) also adds an "except as otherwise stated by Act of Congress" clause onto the statute to carve out additional exceptions to the removal ban. As explained above, Congress was well aware of both Section 1441(a) and Section 1452(a) when it enacted SLUSA. Congress could have added an "except clause" to Section 22(a)'s removal ban for any federal statutes such as the bankruptcy removal provision, but Congress did not do so. The later amended Section 22(a) clearly delineates what type of cases are exempt from the removal ban and actions falling under Section 1452(a) were not carved out by Congress. As the Supreme Court cautioned, it is not the role of the court "to disregard clear language based on an intuition" of what Congress may have intended. *Cyan*, 138 S.Ct. at 1078 (citation omitted).[3]

---

[3] Section 22(a) confers concurrent jurisdiction over cases asserting Securities Act claims, "except as provided in section 77p of this title [Section 16] with respect to covered class actions." 28 U.S.C. § 77v(a). The petitioners in *Cyan* argued that this "except" clause should be interpreted as referring only to the definition of "covered class actions" as set forth in section 77p(f)(2), which states that a "covered class action" is a lawsuit seeking damages on behalf of more than 50 persons and does not specify whether the lawsuit is brought under state or federal law. The petitioners argued that because section 77p bars only certain state-law claims, unless the definition of "covered class action" in section 77p(f)(2) was interpreted

Accordingly, the Second Circuit's concern about surplusage in Section 1441(a) does not warrant removal pursuant to Section 1452(a) despite the explicit removal prohibition in the later amended Section 22(a).

## IV. SECTION 22(a)'s PROHIBITION ON REMOVAL OVERRIDES THE REMOVAL PROVISION UNDER CAFA

As their second basis for removal to this Court, Defendants rely upon CAFA's removal provision. CAFA amended the requirements for diversity jurisdiction by granting the federal district courts original jurisdiction over class actions where the value exceeds $5 million and where at least one plaintiff is diverse from at least one defendants (thus, no longer requiring complete diversity). *See* 28 U.S.C. § 1453. However, as the more specific statute, Section 22(a) prohibits removal despite the conflicting CAFA removal provision.

Section 22(a) is a more specific statute than CAFA. As the Ninth Circuit has already held, "CAFA's general grant of the right of removal of high-dollar class actions does not trump § 22(a)'s specific bar to removal of cases arising under the Securities Act of 1933." *Luther*, 533 F.3d at 1034 ("'It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.'") (quoting *Radzanower*, 426 U.S. at 153); *see also Vanbecelaere v. YayYo, Inc.*, 2020 U.S. Dist. LEXIS 163680, at *5 (C.D. Cal. Sep. 8, 2020) (rejecting defendant's argument that

---

as the exception to the grant of concurrent jurisdiction, the "exception" clause would be rendered meaningless. *Cyan*, 138 S.Ct. at 1070, 1073-74. In opposition to this argument, the respondent set forth their view on Congress's intent behind the "except" clause. *Id.* at 1074. Rejecting the petitioner's argument and noting that it was unsure what Congress's intent was, the Supreme Court explained: "In the end, the uncertainty surrounding Congress's reasons for drafting that clause does not matter. Nor does the possibility that the risk Congress addressed (whether specific or inchoate) did not exist. Because irrespective of those points, we have no sound basis for giving the except clause a broader reading than its language can bear. And that is especially true in light of the dramatic change such an interpretation would work in the 1933 Act's jurisdictional framework. Whatever questions remain as to the except clause's precise purpose—and we do not gainsay there are some—they do not give us permission to devise a statute (and at that, a transformative one) of our own." *Id.* at 1075.

13

CAFA's removal provision trumps the removal ban in Section 22(a)). Specifically, the Ninth Circuit found that the Securities Act "is the more specific statute; it applies to the narrow subject of securities cases and § 22(a) more precisely applies only to claims arising under the Securities Act of 1933. CAFA, on the other hand, applies to a 'generalized spectrum' of class actions." *Luther*, 533 F.3d at 1034 (quoting *Radzanower*, 426 U.S. at 153).

Accordingly, as the more specific statute, Section 22(a) controls and this action is not removable under CAFA. *See id.* (motion to remand purported class action alleging violations of the Securities Act was properly granted despite CAFA).[4]

Notably, in *Cyan*, the defendant could also have easily removed the action under CAFA. It would have made no sense for the Supreme Court to expend so much analysis on the primacy of Section 22(a) and state courts' concurrent jurisdiction over claims under the Securities Act, if the whole analysis could have been so easily subverted through such a visible CAFA backdoor.

---

[4] Defendant DCG relies on *Owen v. Elastos Found.*, 438 F. Supp. 3d 187 (S.D.N.Y. 2020) for its argument that removal is appropriate under CAFA. In *Owen* the court found that the Ninth Circuit holding in *Luther* that Section 22(a) is more specific than CAFA was foreclosed by the Second Circuit's decision in *WorldCom*. The *Owen* court also disregarded the Supreme Court's decision in *Cyan* as unrelated to the conflict between CAFA and Section 22(a). However, as explained above, *supra* Section II, in light of the Supreme Court's reaffirmation of the primacy of Section 22(a) in *Cyan*, the Second Circuit's *WorldCom* decision must be reconsidered. Just as *Owen* was not presented with precisely the same issue as in *WorldCom*, but looked to the *WorldCom* decision for guidance, *Cyan* changes the validity of the Second Circuit's reasoning in *WorldCom*.

## CONCLUSION

For the reasons set forth above, Plainitff respectfully requests that this action be remanded to New York State Supreme Court for New York County.

DATED: April 7, 2023

                                **HGT LAW**

                                */s/ JooYun Kim*
                                Hung G. Ta, Esq.
                                JooYun Kim, Esq.
                                Natalia D. Williams, Esq.
                                250 Park Avenue, 7th Floor
                                New York, New York 10177
                                Tel:    (646) 453-7288
                                Fax:   (646) 453-7289
                                Email: hta@hgtlaw.com
                                                    jooyun@hgtlaw.com
                                                    natalia@hgtlaw.com

                                William R. Restis, Esq.
                                402 West Broadway, Suite 1520
                                San Diego, CA 92101
                                Tel: +1.619.270.8383
                                Email: william@restislaw.com

                                *Attorneys for Plaintiff and Proposed Class Counsel*