**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TOBIAS MOELLER-BERTRAM, individually, and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:23-cv-02027 |
| v. | |
| GEMINI TRUST COMPANY, LLC; and DIGITAL CURRENCY GROUP, INC., | Hon. Lewis J. Liman |
| *Defendants*. | |

**DIGITAL CURRENCY GROUP, INC.'S MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000

*Attorneys for Defendant Digital Currency*
*Group, Inc.*

Dated: April 21, 2023

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 3

I.     BINDING PRECEDENT CONFIRMS THAT REMOVAL IS PROPER UNDER
SECTION 1452(A) ...................................................................................... 4

     A.    The Second Circuit Has Already Decided This Issue ............................ 5

     B.    Plaintiff Does Not Carry His Burden Of Showing That *WorldCom* Is All
But Certain To Be Overruled .............................................................. 7

     C.    Plaintiff's Attacks On WorldCom Fail ................................................ 12

II.    REMOVAL ALSO WAS PROPER UNDER CAFA ...................................... 15

CONCLUSION .................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Austin v. United States*,
    280 F. Supp. 3d 567 (S.D.N.Y. 2017).................................................................................11

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
    368 F.3d 86 (2d Cir. 2004)............................................................................... *passim*

*Cartica Mgmt., LLC v. Corpbanca, S.A.*,
    50 F. Supp. 3d 477 (S.D.N.Y. 2014)................................................................................7

*CB v. St. Vincent's Servs., Inc.*,
    2018 WL 1737701 (S.D.N.Y. Mar. 19, 2018) ..........................................................7

*Chevron Corp. v. Donziger*,
    886 F. Supp. 2d 235 (S.D.N.Y. 2012)...........................................................................7

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
    138 S. Ct. 1061 (2018).................................................................................... *passim*

*Gonsalves v. Amoco Shipping Co.*,
    733 F.2d 1020 (2d Cir. 1984), *superseded by statute as recognized in*
    *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) ...........................14

*Jordan v. Nationstar Mortg. LLC*,
    781 F.3d 1178 (9th Cir. 2015) .......................................................................................16

*Katz v. Gerardi*,
    552 F.3d 558 (7th Cir. 2009) ...............................................................................15, 16

*Levine v. AtriCure, Inc.*,
    594 F. Supp. 2d 471 (S.D.N.Y. 2009)...........................................................................17

*Luther v. Countrywide Home Loans Servicing LP*,
    533 F.3d 1031 (9th Cir. 2008) .......................................................................................16

*Monsanto v. United States*,
    348 F.3d 345 (2d Cir. 2003)................................................................................8, 11

*N.J. Carpenters Vacation Fund v. HarborView Mortg Loan Tr. 2006-4*,
    581 F. Supp. 2d 581 (S.D.N.Y. 2008)...................................................................4, 15, 16

*Owen v. Elastos Found.*,
    438 F. Supp. 3d 187 (S.D.N.Y. 2020).................................................................11, 16, 17

*Estate of Pew v. Cardarelli*,
  527 F.3d 25 (2d Cir. 2008)................................................................................16

*Radzanower v. Touche Ross & Co.*,
  426 U.S. 148 (1976)........................................................................................5

*Rainey v. United States*,
  2017 WL 507294 (S.D.N.Y. Feb. 7, 2017).....................................................11

*Riverbay Corp. v. Serv. Emps. Int'l Union*, *Local 32BJ*,
  2023 WL 2136423 (S.D.N.Y. Feb. 21, 2023)..................................................4

*Schell v. Abedon-Butwin Oil Co.*,
  1991 WL 74653 (S.D.N.Y. Apr. 29, 1991), *reinstated*, 1993 WL 77371
  (S.D.N.Y. Mar. 15, 1993) ................................................................................8

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018).............................................................................4

*United States v. Diaz*,
  122 F. Supp. 3d 165 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017) ..........7, 8

*United States v. Emmenegger*,
  329 F. Supp. 2d 416 (S.D.N.Y. 2004) ..............................................................7

*United States v. Wong*,
  40 F.3d 1347 (2d Cir. 1994)..............................................................................8

*In re WorldCom, Inc. Sec. Litig.*,
  293 B.R. 308 (S.D.N.Y. 2003), *aff'd, Cal. Pub. Emps.' Ret. Sys. v. WorldCom,
  Inc.*, 368 F.3d 86 (2d Cir. 2004) .....................................................................13

**Statutes**

11 U.S.C. §§ 101 *et seq.*................................................................................3

11 U.S.C. § 362 ...............................................................................................3

15 U.S.C. § 77e ...............................................................................................2

15 U.S.C. § 77l ................................................................................................2

15 U.S.C. § 77o ...............................................................................................2

15 U.S.C. § 77p.......................................................................................8, 9, 10

15 U.S.C. § 77k ................................................................................................4

15 U.S.C. § 77v................................................................................... *passim*

28 U.S.C. § 1292 ........................................................................................................17

28 U.S.C. § 1332 ......................................................................................................2, 3

28 U.S.C. § 1334 ......................................................................................................3, 4

28 U.S.C. § 1441 ....................................................................................................6, 14

28 U.S.C. § 1446 ......................................................................................................2, 3

28 U.S.C. § 1452 ......................................................................................................3, 4

28 U.S.C. § 1453 ................................................................................................2, 3, 15

## PRELIMINARY STATEMENT

Plaintiff's motion to remand asks this Court to defy the Second Circuit's controlling decision in *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), holding that 15 U.S.C. § 77v(a) does not prevent removal of cases otherwise eligible for removal to federal court pursuant to 28 U.S.C. §§ 1334 and 1452(a) regarding cases "related to" pending bankruptcy proceedings. 368 F.3d at 108. That binding precedent directly forecloses Plaintiff's argument in support of remand, and because Plaintiff does not contest that the elements for removal under Sections 1334 and 1452 are satisfied, Plaintiff's motion is dead on arrival.[1]

The only basis Plaintiff offers for disobeying binding Second Circuit precedent is the Supreme Court's intervening decision in *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 138 S. Ct. 1061 (2018). But Plaintiff does not even acknowledge—much less satisfy—the extraordinarily high bar for disregarding Circuit precedent. Courts in this District must adhere to the published rulings of the Second Circuit, subject only to a narrow exception applicable where an intervening Supreme Court decision renders it "all but certain" that either the Second Circuit or the Supreme Court will overrule the existing Circuit precedent. Plaintiff comes nowhere close to satisfying that demanding standard: *Cyan* did not involve the Bankruptcy Code, did not resolve any conflict between Section 77v(a) and another removal statute, and did not even arise in the context of removal. Nothing in *Cyan* undermines the holding in *WorldCom*, and it certainly does not render *WorldCom*'s overruling inevitable. And in any event, Plaintiff's attacks on *WorldCom* fail on their own terms.

---

[1] Plaintiff uses the section numbers from the original Securities Act (e.g., Section 22(a)) rather than the section numbers from the U.S. Code (e.g., Section 77v(a)). Because the Supreme Court uses the codified section numbers, DCG will do the same.

Because binding precedent confirms that Section 1452(a) provides valid grounds for removal, there is no need for the Court to address whether the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1446, 1453(b), provides an independent basis for removal.  If the Court were to reach that issue, however, all of the reasoning in *WorldCom* would apply with equal force.  In fact, the case for removal under CAFA is even stronger, because that statute includes a discrete list of exceptions to removal—including certain claims brought under the Securities Act—but does not except the whole of class actions brought pursuant to the Securities Act, as Plaintiff urges here.

Plaintiff offers no basis upon which this Court could deviate from binding precedent and instead invites reversible error by asking this Court to do so.  Plaintiff's motion should be denied.

## BACKGROUND

Plaintiff's claims center on a lending relationship between Gemini Trust Company, LLC ("Gemini"), non-party Genesis Global Capital, LLC ("Genesis"), and participants of the "Gemini Earn" program.  Compl. ¶¶ 3, 4.  Under the Gemini Earn program, participants could loan crypto assets to Genesis in exchange for interest, with Gemini acting as the agent of the participants to facilitate the transactions.  *Id.* ¶¶ 4, 19–26.  Plaintiff, a participant in the Gemini Earn program, alleges that the agreements underlying the lending relationship, called "Master Digital Asset Loan Agreements," were securities subject to the requirements of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77e, 77l, and 77o.  Compl. ¶¶ 4, 7, 14, 44, 56.

Plaintiff claims that Genesis and Gemini offered and sold unregistered securities through the Gemini Earn program in violation of Sections 5 and 12(a)(1) of the Securities Act.  Compl. ¶¶ 6, 27–36, 99–104.  Plaintiff also seeks to hold Defendant Digital Currency Group, Inc. ("DCG") (Genesis's parent company) liable as a "control person" of Genesis under Section 15 of the

Securities Act, alleging that DCG's purported "power and influence" caused Genesis's alleged misconduct and violation of the Securities Act. *Id.* ¶¶ 105–12.

Genesis is not a party to this action. On January 19, 2023, Genesis and its affiliates filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, with the United States Bankruptcy Court for the Southern District of New York. Those Chapter 11 cases are jointly administered under the caption *In re Genesis Global Holdco, LLC, et al.*, No. 23-10063-SHL (Bankr. S.D.N.Y.) (the "Genesis Bankruptcy Cases"). During the pendency of the bankruptcy action, Genesis is protected by the automatic stay of 11 U.S.C. § 362(a), which prohibits the filing of actions against a debtor relating to prepetition claims or seeking control over property of the estate.

Plaintiff brought this action against Defendants DCG and Gemini on February 22, 2023 in the New York State Supreme Court for New York County. *Tobias Moeller-Bertram v. Gemini Trust Co., LLC et al.*, No. 151710/2023 (Sup. Ct., N.Y. Cnty. filed Feb. 22, 2023). DCG timely removed this action, with Gemini's consent, to this Court on March 9, 2023 pursuant to the Bankruptcy Code, 28 U.S.C. §§ 1334(b), 1452(a), and CAFA, 28 U.S.C. §§ 1332(d), 1446, 1453(b).

## ARGUMENT

Defendants have invoked two bases for removal: Section 1452(a) (regarding cases "related to" pending bankruptcy proceedings) and Section 1453(b) (regarding class actions). Notice of Removal ¶¶ 3–30, Dkt. 1. In order to succeed on his motion, Plaintiff must show that *neither* of those statutes provides a basis for removal. In view of the fact that binding precedent forecloses Plaintiff's argument under Section 1452(a) and counsels the same result under Section 1453(b), Plaintiff cannot carry that burden.

## I.  BINDING PRECEDENT CONFIRMS THAT REMOVAL IS PROPER UNDER SECTION 1452(A)

Section 1334(b) vests the federal district courts with jurisdiction "of all civil proceedings . . . arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  Section 1452(a) provides, in turn, that a party "may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. § 1334]."  *Id.* § 1452(a).  This case plainly is "related to" the Genesis Bankruptcy Cases:  The basis for liability is Genesis's alleged primary violations of the Securities Act, which, if proven in this case, could trigger a right of contribution for Defendants, *see* 15 U.S.C. § 77k(f)(1), and therefore any rulings in this case would have at least a "conceivable"—if not substantial—"effect on the bankrupt estate," *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018) (quotation marks omitted).

Plaintiff does not dispute either that this case is "related to" the Genesis Bankruptcy Cases such that this Court has subject-matter jurisdiction or that this case qualifies for removal pursuant to Sections 1334 and 1452(a).  Because Defendants have carried their "burden of proving federal jurisdiction" in the first instance, *Riverbay Corp. v. Serv. Emps. Int'l Union*, *Local 32BJ*, 2023 WL 2136423, at *3 (S.D.N.Y. Feb. 21, 2023), "the burden shifts to the plaintiff to show that an exception to removal applies," *N.J. Carpenters Vacation Fund v. HarborView Mortg. Loan Tr. 2006-4*, 581 F. Supp. 2d 581, 582–83 (S.D.N.Y. 2008).[2]

---

[2] Plaintiff urges that the burden is on Defendants to show that an exception to removal does *not* apply.  Mot. 3–4.  That is incorrect, but also irrelevant:  The issue here is one of statutory interpretation in which the allocation of burden is largely immaterial, and in any event and as set forth below, *WorldCom* conclusively resolves any question as to the removability of this case.

Plaintiff relies on Section 77v(a) of the Securities Act—which sets forth a general prohibition against removal of cases brought only pursuant to the Securities Act—as the sole ground for opposing removal.  That statute provides, in relevant part:

> Except as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.

15 U.S.C. § 77v(a).  Plaintiff's argument is foreclosed by binding precedent.

### A.    The Second Circuit Has Already Decided This Issue

In *WorldCom*, the Second Circuit confronted the exact issue Plaintiff raises here—whether a Securities Act case brought in state court that qualifies for removal pursuant to Section 1452(a) is nonetheless nonremovable by operation of Section 77v(a) of the Securities Act.  368 F.3d at 90. Analyzing the text and deploying settled rules of statutory interpretation, the Second Circuit held that "generally nonremovable claims brought under the Securities Act of 1933 may be removed to federal court if they come within the purview of 28 U.S.C. § 1452(a)."  *Id.* at 108.  The Court offered three related rationales for this ruling.

*First*, the Court held that Section 77v(a) and Section 1452(a) are of equal specificity, such that the canon of construction generally providing that "a specific statute will not be controlled or nullified by a general one" does not apply.  *WorldCom*, 368 F.3d at 101 (quotation marks omitted) (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976)).  The Court observed that Section 77v(a) and Section 1452(a) both "appl[y] to a defined class of *Claims*," and that "the class of claims covered by Section [77v(a)] is no more specific than the class of claims covered by Section 1452(a)," as each covers some, but not all, of the claims covered by the other.  *Id.* at 102. The Court further held that even if Section 77v(a) were more specific than Section 1452(a), that would not resolve the issue, because "where the application of a specific statute would 'unduly interfere' with the operation of a general statute that was enacted subsequent to the specific statute,

5

the more general statute controls." *Id.* at 103.  In the Court's view, giving Section 77v(a) effect over Section 1452(a) "could interfere with the operation of the Bankruptcy Code," namely, "Congress's purpose of centralizing bankruptcy litigation in a federal forum." *Id.*

*Second*, the Court rejected the plaintiffs' argument that Section 77v(a) is the more recently enacted statute and should control.  The general prohibition against removal in the Securities Act was enacted in 1933, whereas Section 1452(a) was enacted in 1984.  *WorldCom*, 368 F.3d at 104. It did not matter, the Court said, that the Securities Litigation Uniform Standards Act ("SLUSA") amended Section 77v(a) in 1998, because "given Congress's focus in 1998 on *expanding* federal jurisdiction, it would be ironic to read SLUSA as implicitly *contracting* federal jurisdiction by reversing, without comment in either text or legislative history, the bankruptcy removal statute's effect on the prior removal scheme." *Id.* at 104–05 (quotation marks omitted).

*Finally*, the Second Circuit held that giving Section 77v(a) effect over Section 1452(a) would render superfluous language in the more general removal statute—28 U.S.C. § 1441— permitting removal "[e]xcept as otherwise expressly provided by Act of Congress."  28 U.S.C. § 1441(a).  Section 1452(a) has no such language, and "[t]he absence of [] such a crucial exception in the language of Section 1452(a) suggests that, in 1978, when it originally enacted Section 1452(a) as part of the Bankruptcy Code, Congress did not intend for Section [77v(a)] and its analogues to bar removal of 'related to' claims." *WorldCom*, 368 F.3d at 106.  The Court reasoned that "if [it] concluded that a nonremoval provision such as Section [77v(a)] prevents removal under *both* Section 1441(a) and Section 1452(a), notwithstanding the phrase '[e]xcept as otherwise expressly provided by Act of Congress' in Section 1441(a), that phrase in the general removal statute would serve no apparent purpose." *Id.* (third alteration in original).

*WorldCom* therefore resolved the exact issue Plaintiff raises here regarding the interplay between Section 77v(a) and Section 1452(a), confirming that Section 77v(a) does not bar removal under Section 1452(a).  368 F.3d at 108.  And in doing so, the Second Circuit considered and rejected each of the arguments Plaintiff raises here.  *WorldCom* is directly on point and compels denial of Plaintiff's motion.

> **B.      Plaintiff Does Not Carry His Burden Of Showing That *WorldCom* Is All But Certain To Be Overruled**

Plaintiff does not seriously dispute that *WorldCom* applies here.  Instead, he claims that *WorldCom* "is no longer good law" in light of the Supreme Court's decision in *Cyan*.  Mot. 6. Plaintiff is wrong several times over.

As an initial matter, Plaintiff ignores the substantial burden he faces in seeking to persuade this Court to ignore Second Circuit precedent.  Courts in this District are "required to follow [Second Circuit precedent] unless and until it is overruled in a precedential opinion by the Second Circuit itself."  *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017) (quotation marks omitted).  There is a narrow exception to this rule where intervening Supreme Court precedent "conclusively supports the finding that the Second Circuit or the Supreme Court is all but certain to overrule" the applicable Second Circuit precedent.  *Id.* (quotation marks omitted) (quoting *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004)).  The cases in this District holding that a party had made such a showing are limited to situations in which either the intervening Supreme Court decision directly abrogated a holding of the Second Circuit, *see, e.g.*, *CB v. St. Vincent's Servs., Inc.*, 2018 WL 1737701, at *2– 5 (S.D.N.Y. Mar. 19, 2018); *Cartica Mgmt., LLC v. Corpbanca, S.A.*, 50 F. Supp. 3d 477, 486–90 (S.D.N.Y. 2014), or where the Second Circuit had expressly overruled or affirmed decisions that were contrary its existing precedent, *see, e.g.*, *Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235,

281–85 (S.D.N.Y. 2012); *Schell v. Abedon-Butwin Oil Co.*, 1991 WL 74653, at *1–2 (S.D.N.Y. Apr. 29, 1991), *reinstated*, 1993 WL 77371 (S.D.N.Y. Mar. 15, 1993).

Significantly, it is not enough to show merely that there is some "tension" between the controlling precedent and the intervening authority, *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003)—"until the Supreme Court rules otherwise, the district court[s] [are] obliged to follow [Second Circuit] precedent, even if that precedent might be overturned in the near future," *United States v. Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994). Instead, the party must show that "a subsequent decision of the Supreme Court so undermines [the controlling precedent] that it will almost inevitably be overruled by the Second Circuit." *Diaz*, 122 F. Supp. 3d at 179 (quotation marks omitted). Plaintiff relies entirely on *Cyan* in an effort to meet this demanding standard, but comes nowhere close to doing so.

*Cyan* did not involve the removal of a securities class action from state court to federal court. Instead, the defendants in *Cyan* sought to dismiss the case brought against them in state court on the ground that SLUSA stripped state courts of their jurisdiction to adjudicate class actions alleging only violations of the Securities Act. 138 S. Ct. at 1068–69. The basis of the defendants' argument was SLUSA's amendment to the jurisdictional provision of the Securities Act (with new material in italics):

> The district courts of the United States . . . shall have jurisdiction[,] . . . concurrent with State and Territorial courts, *except as provided in section 77p of this title with respect to covered class actions*, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.

15 U.S.C. § 77v(a). A "covered class action" is defined in Section 77p(f)(2) to generally comprise any suit seeking damages on behalf of more than 50 persons. *Id.* § 77p(f)(2). Section 77p provides that "covered class actions" that are premised on state-law analogues to the Securities Act cannot be maintained in any state or federal court, and that such class actions that are filed in state court

may be removed to federal court and subject to dismissal. *Id.* § 77p(b)–(c).  The defendants argued

that in excepting "covered class actions" as "provided in Section 77p" from the grant of concurrent

jurisdiction, SLUSA divested state courts of jurisdiction over all "covered class actions,"

regardless of whether they are premised on state-law analogues to the Securities Act. *Cyan*, 138

S. Ct. at 1070-71.  The Supreme Court rejected the defendants' argument as squarely foreclosed

by the plain language of the statute. *Id.* at 1069–72.

Because *Cyan* did not involve removal of a case to federal court, the Supreme Court did

not need to analyze the scope of removable actions pursuant to Section 77v(a). *Cyan*, 138 S. Ct.

at 1069.  The federal government, however, had argued that while the defendants were wrong on

whether SLUSA stripped state courts of jurisdiction, they could have removed the action to federal

court pursuant to Section 77v(a)'s amended language, providing in relevant part (with new

material in italics):

> *Except as provided in section 77p(c) of this title*, no case arising under this
> subchapter and brought in any State court of competent jurisdiction shall be
> removed to any court of the United States.

15 U.S.C. § 77v(a).  Section 77p(c), in turn, provides that "[a]ny covered class action brought in

any State court involving a covered security, as set forth in [Section 77p(b)], shall be removable

to the Federal district court for the district in which the action is pending, and shall be subject to

[dismissal under Section 77p(b)]." *Id.* § 77p(c).  The government argued that because Section

77v(a) cross-references only Section 77p(c), any state class action brought under the Securities

Act is removable to federal court without regard to whether the class action satisfies the

requirements of Section 77p(b) for immediate dismissal. *Cyan*, 138 S. Ct. at 1075.  The Court

rejected this argument too, holding that the plain language of SLUSA makes clear that the only

class actions removable pursuant to Section 77p(c) are those arising under state-law analogues to

the Securities Act and therefore subject to immediate dismissal pursuant to Section 77p(b).  *Id.* at 1075–76.

It is clear, then, that *Cyan* has nothing to say about whether Securities Act cases brought in state court that are "related to" pending bankruptcy proceedings are removable to federal court. Not only did the case not involve the Bankruptcy Code, it did not present any conflict between Section 77v(a) and another removal statute.  In fact, the issue of removal arose only in the context of the government's collateral argument regarding federal courts' de facto exclusive jurisdiction over Securities Act claims.  The Supreme Court did not address whether Section 77v(a) is more specific than Section 1452(a) (or any other statute) or unduly interfered with Section 1452(a)'s operation, *cf. WorldCom*, 368 F.3d at 101–04, did not address whether Section 77v(a) should be deemed the more recent legislative action over Section 1452(a) (or any other statute), *cf. id.* at 104–05, and did not address whether any of the proffered readings of Section 77v(a) would render superfluous the language in Section 1441 (or any other statute), *cf. id.* at 105–08.  In short, the Supreme Court did not even obliquely consider the question at issue here, and nor did it cast any doubt on any of the Second Circuit's reasoning in *WorldCom*.

Plaintiff repeatedly refers to *Cyan* as establishing the "primacy" of Section 77v(a)'s general prohibition on removal, Mot. 1, 5–6, 14, but the Supreme Court never used such terminology in *Cyan*.  It merely confirmed that state courts had long adjudicated cases brought pursuant to the Securities Act and that the defendants' argument for exclusive federal court jurisdiction based on a strained reading of SLUSA was too much for the statutory text to bear.  *Cyan*, 138 S. Ct. at 1071. The Court did not establish Section 77v(a) as a universal, immutable rule not subject to statutory exceptions, where properly enacted by Congress.

Notably, one court in this District has already rejected the argument that *Cyan* altered the precedential force of *WorldCom*. In *Owen v. Elastos Foundation*, 438 F. Supp. 3d 187 (S.D.N.Y. 2020), the court held (as discussed below) that Section 77v(a) does not prevent removal of cases pursuant to CAFA. *Id.* at 191. In doing so, the court reasoned that there was "no principled basis on which to distinguish *WorldCom* from" the case before it. *Id.* In response, the plaintiff directed the court to *Cyan*, but the court correctly observed that *Cyan* "dealt only with a statute whose clear text did not authorize the removal of Securities Act class actions," and that *Cyan* therefore did "not move the ball in [the] case." *Id.* at 193. The court accordingly saw "no reason to deviate either from Second Circuit's reasoning in *WorldCom* or from established rules of statutory construction." *Id.*

Importantly, even were Plaintiff's characterizations of the decision in *Cyan* correct—and they are not—it would not matter. In order to justify a district court's defiance of binding Second Circuit precedent, a party must establish that the controlling Circuit precedent "will almost inevitably be overruled." *Austin v. United States*, 280 F. Supp. 3d 567, 572 (S.D.N.Y. 2017). It is not enough for the party to show merely that the intervening authority is in "tension" with the existing Circuit precedent, *Monsanto*, 348 F.3d at 350–51, nor is it enough to persuade a court that, "by its own analysis, subsequent Supreme Court cases call for a different result than that reached" by the Second Circuit, *Rainey v. United States*, 2017 WL 507294, at *2 (S.D.N.Y. Feb. 7, 2017) (quotation marks omitted). Plaintiff scatters citations to *Cyan* throughout his brief, *see* Mot. 9–12, but never explains how the *holding* of *Cyan* directly and irrefutably contradicts the *holding* of *WorldCom* such that the overruling of *WorldCom* is a foregone conclusion. That is because *WorldCom* and *Cyan* stand for two entirely different propositions. *WorldCom* must control.

11

### C.      Plaintiff's Attacks On *WorldCom* Fail

That is the end of the matter:  Plaintiff does not dispute this Court's jurisdiction pursuant to Sections 1334(b) and 1452(a), and his sole argument in opposition to removal has been squarely rejected by the Second Circuit in a binding decision.  No more analysis is required, and the motion must be denied.  To the extent, however, the Court is at all inclined to consider the merits of Plaintiff's arguments against *WorldCom*, those arguments fail on their own terms.

*First*, Plaintiff urges that Section 77v(a) is more specific than Section 1452(a) and therefore should control, contending that the Second Circuit's holding to the contrary in *WorldCom* is simply wrong and regurgitating the same arguments already rejected by the Second Circuit.  Mot. 7–8.  Plaintiff argues that Section 77v(a) "applies to a particular and well defined group of Plaintiffs that Congress consciously selected after a study of state and federal securities class actions," Mot. 8 (quotation marks omitted), ignoring that Section 77v(a) applies based on the type of action, not the type of plaintiff (just like Section 1452(a)), and that Section 1452(a) itself is the product of a "conscious[]" selection of the types of cases in need of uniform federal review, *see WorldCom*, 368 F.3d at 103–04.  Plaintiff's contention that Section 1452(a) is broader because it covers actions "related to" bankruptcy (as opposed, presumably, to just bankruptcy petitions themselves), Mot. 8, overlooks the relevant inquiry:  The question is not the sheer number of claims to which each section applies, but rather whether one section subsumes the claims or instances covered by the other.  Because, as the Second Circuit recognized, the two statutes here overlap, but do not subsume one or the other, *WorldCom*, 368 F.3d at 102, neither is more specific than the other.

*Second*, Plaintiff purports to argue that Section 77v(a) does not unduly interfere with the Bankruptcy Code, but in reality argues only that application of Section 1452(a) equally interferes with Section 77v(a).  Mot. 8–9.  Plaintiff has misunderstood the import of this step in the analysis.  In *WorldCom*, the Second Circuit concluded that Section 77v(a) is not more specific than Section

1452(a), and thus the canon of construction favoring specific statutes over general ones did not control. 368 F.3d at 102–03. The Court went on to say, however, that *even if* Section 77v(a) were more specific than Section 1452(a), there is an exception to that canon of construction where application of the more specific statute would "unduly interfere" with a more recent, general statute, and that here, allowing Section 77v(a) to preempt removal under Section 1452(a) would interfere with the Bankruptcy Code's mission of "grant[ing] comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with *all* matters connected with the bankruptcy estate." *Id.* at 103–04 (quotation marks omitted). Plaintiff does not actually dispute that conclusion, nor could he: "Broadly construing the federal courts' bankruptcy jurisdiction is essential to their ability to preserve assets and reorganize the estate." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 329 (S.D.N.Y. 2003), *aff'd*, *WorldCom*, 368 F.3d 86. It is irrelevant whether application of Section 1452(a) would interfere with Section 77v(a)—the purpose of this step is only to assess whether a specific statute should control over a more general one, not to balance the relative public interests of the two statutes.

*Third*, Plaintiff contends that via SLUSA, Section 77v(a) is actually the more recently amended statute and therefore should control over Section 1452(a), cherry-picking out of context a single sentence of the Second Circuit's decision referring to "*individual* actions under the 1933 Act." Mot. 9–11 (quoting *WorldCom*, 368 F.3d at 104). But while the fact that *WorldCom* involved an individual action was briefly cited by the Second Circuit as an additional reason for its decision, the salient point was that nothing in SLUSA purported to *expand* state-court jurisdiction over Securities Act claims, and that it would make little sense to read SLUSA as silently repealing Section 1452(a) as to Securities Act claims. 368 F.3d at 104; *see also Cyan*, 138 S. Ct. at 1071 ("Congress does not hide elephants in mouseholes." (quotation marks omitted)).

That Congress did not address Section 1452(a) when enacting SLUSA is irrelevant:  The purpose of SLUSA was to close a loophole under which plaintiffs were avoiding the substantive burdens imposed by the Private Securities Litigation Reform Act, Pub. L. No. 104–67, 109 Stat. 737 (1995), by pursuing state-law analogues to Securities Act claims rather than alleging violations of the Securities Act itself.  *Cyan*, 138 S. Ct. at 1066–67.  In relevant part, SLUSA had nothing to do with class actions actually brought *under the Securities Act*—indeed, that was the principal holding of *Cyan*.  *See generally id.*  Plaintiff therefore cannot reframe SLUSA's narrow effort to address a discrete problem as a wholesale reevaluation of the removability of Securities Act class actions.

*Finally*, Plaintiff argues that the principal reasoning offered by the Second Circuit in *WorldCom*—that giving Section 77v(a) effect over Section 1452(a) would render superfluous the language in the general removal provision (28 U.S.C. § 1441(a)) permitting removal "except as otherwise expressly provided by Act of Congress"—is flawed.  Mot. 11–13.  Once again, though, Plaintiff's argument does not line up with its headline conclusion.  While Plaintiff purports to claim that Section 77v(a)'s "removal prohibition does not render the exception to the general removal prohibition in Section 1441 superfluous," Mot. 11 (bold and capitalization omitted), he does not actually refute the Second Circuit's conclusion on this point.  Instead, Plaintiff claims that by giving effect to Section 1452(a), the Second Circuit is committing the very error it sought to avoid, that is, reading an "except" clause into Section 77v(a), where none exists.  *Id.* at 12.  But the two statutes are textually irreconcilable with one another, and so one of them *must* yield to the other.  The Second Circuit's conclusion was merely that it should give effect to a difference in language between two statutes each governing removal.  *WorldCom*, 368 F.3d at 106–07 (citing *Gonsalves v. Amoco Shipping Co.*, 733 F.2d 1020 (2d Cir. 1984), *superseded by statute as*

*recognized in WorldCom*, 368 F.3d 86 (2d Cir. 2004)).  Plaintiff offers no meaningful response to that conclusion.

## II.     REMOVAL WAS ALSO PROPER UNDER CAFA

Because removal of this case was proper pursuant to Section 1452(a), as decided by *WorldCom*, there is no need for the Court to address Plaintiff's arguments regarding CAFA.  In any event, though, removal also is appropriate under CAFA.

Resort to the canons of construction deployed by the Second Circuit in *WorldCom* is not even necessary with respect to CAFA.  That is because unlike Section 1452(a), Section 1453 sets forth a discrete list of case types that are not subject to removal under CAFA, two of which relate to claims *brought pursuant to the Securities Act*, but none of which applies here.  *See* 28 U.S.C. § 1453(d).  The Seventh Circuit has properly recognized that "[Section] 1453(d) tells us how [CAFA] affects securities cases":  "Claims listed in [Section] 1453(d) are not removable.  Other securities class actions are removable if they meet the requirements of [CAFA]."  *Katz v. Gerardi*, 552 F.3d 558, 562 (7th Cir. 2009).  Any other reading would "make most of [Section] 1453(d) pointless."  *Id.*  One court in this District has held the same.  *See N.J. Carpenters Vacation Fund*, 581 F. Supp. 2d at 587 (citing to Section 1453(d)'s "circumscribed exceptions" to support the conclusion that Section 77v(a) does not override Section 1453).  Plaintiff does not address this textual feature of CAFA at all.  Because the text of Section 1453(d) "leaves no doubt about how the 1933 Act, 1934 Act, and [CAFA] fit together," there is no need to resort to default canons of construction.  *Katz*, 552 F.3d at 562.

If such canons are consulted, however, they lead to the same result.  Plaintiff's sole argument against CAFA removal is his misconception that Section 77v(a) is more specific than CAFA.  *See* Mot. 13–14.  But as one court in this District has already recognized, "[t]here is no principled basis on which to distinguish *WorldCom* from" cases arising under CAFA in this

respect.  *Owen*, 438 F. Supp. 3d at 191.  As in *WorldCom*, the two statutes at issue here are of comparable levels of specificity, because each applies to some, but not all, of the actions covered by the other.  *See id.* at 192; *see also Katz*, 552 F.3d at 561–62 (concluding that neither is more specific than the other).  Plaintiff cites to the Ninth Circuit's decision in *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008), Mot. 14, in which the Ninth Circuit opined that "the Securities Act of 1933 is the more specific statute," because "it applies to the narrow subject of securities cases" whereas CAFA "applies to a 'generalized spectrum,'" *Luther*, 533 F.3d at 1034.  But it is *WorldCom*, not *Luther*, that provides the law of decision in this Circuit, and in *WorldCom*, the Second Circuit analyzed the extent to which the two statutes overlapped in conducting this analysis.  368 F.3d at 102–03.  Applying that analysis here compels rejection of Plaintiff's construction.[3]

Moreover, even if Section 77v(a) were more specific than CAFA, that would not aid Plaintiff.  As with Section 1452(a), giving effect to Section 77v(a) over CAFA would unduly interfere with CAFA's "overriding purpose . . . to provide for federal court jurisdiction in cases of national importance."  *N.J. Carpenters Vacation Fund*, 581 F. Supp. 2d at 587 (citing *Estate of Pew v. Cardarelli*, 527 F.3d 25, 332 (2d Cir. 2008)).  Plaintiff does not address this essential step in the analysis under the specificity canon.  Given CAFA's purpose and design, the canon of construction favoring specific statutes over general ones would not apply here, and the more recent statute instead would apply.  *See Owen*, 438 F. Supp. 3d at 191.

---

[3] It is not clear that *Luther* remains good law even in the Ninth Circuit.  In *Luther*, the Ninth Circuit framed its analysis by noting that "removal statutes are strictly construed against removal."  533 F.3d at 1034.  The Supreme Court subsequently held that that rule does not apply to CAFA, thus "undercut[ting] the theory or reasoning underlying" *Luther*.  *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 & n.2 (9th Cir. 2015) (quotation marks omitted).

Under either mode of analysis, Plaintiff's argument is foreclosed by the fact that CAFA (enacted in 2005) is the more recently enacted statute.  *See Owen*, 438 F. Supp. 3d at 191 ("Under the rule of recency, CAFA—as the more recently enacted statute—should prevail over Section [77v(a)].").  Tellingly, while Plaintiff embraces the rule of recency (albeit misguidedly) in the context of Section 1452(a), he is silent on its operation here.  Instead, Plaintiff blithely contends that if the defendants in *Cyan* "could also have easily removed the action under CAFA," then "[i]t would have made no sense for the Supreme Court to expend so much analysis on the primacy of Section [77v(a)])."  Mot. 14.  The error in Plaintiff's logic is that the defendants in *Cyan* were seeking to *dismiss* the case brought in state court for lack of subject-matter jurisdiction, not to *remove* the case to federal court.  *Cyan*, 138 S. Ct. at 1068.  Accordingly, the Court could not have resolved the case merely by reference to CAFA.  Plaintiff's challenge to Defendants' removal pursuant to CAFA thus independently fails.

## CONCLUSION

For the foregoing reasons, DCG respectfully request that the Court deny Plaintiff's Motion to Remand.[4]

---

[4] To the extent Plaintiff intends to request certification for interlocutory appeal of an order denying his motion for remand, *see* 28 U.S.C. § 1292(b), the standard for certification plainly is not met here.  There is no "substantial ground for difference of opinion" on the relevant issues, *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 477 (S.D.N.Y. 2009) (quoting 28 U.S.C. § 1292(b)): *WorldCom* clearly is controlling and dispositive.

Dated:   April 21, 2023                    Respectfully Submitted,
         New York, New York

                                           /s/ Jonathan D. Polkes
                                           Jonathan D. Polkes
                                           Caroline Hickey Zalka
                                           Jessica L. Falk
                                           Nicole E. Prunetti
                                           Dylan L. Ruffi

                                           WEIL, GOTSHAL & MANGES LLP
                                           767 Fifth Avenue
                                           New York, NY 10153
                                           Telephone: (212) 310-8000
                                           Facsimile: (212) 310-8007
                                           jonathan.polkes@weil.com
                                           caroline.zalka@weil.com
                                           jessica.falk@weil.com
                                           nicole.prunetti@weil.com
                                           dylan.ruffi@weil.com

                                           *Attorneys for Defendant Digital Currency
                                           Group, Inc.*