UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                                   :
TOBIAS MOELLER-BERTRAM, *individually, and on*                     :
*behalf of all others similarly situated*,                         :
                                                                   :
                                    Plaintiffs,                    :          23-cv-2027 (LJL)
                                                                   :
              -v-                                                  :          OPINION AND ORDER
                                                                   :
GEMINI TRUST COMPANY, LLC, and DIGITAL                             :
CURRENCY GROUP, INC.,                                              :
                                                                   :
                                    Defendants.                    :
                                                                   :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        Plaintiff Tobias Moeller-Bertram ("Plaintiff") moves pursuant to 28 U.S.C. § 1447 for an

order remanding this case to New York State Supreme Court, New York County.  Dkt. No. 23.

For the following reasons, the motion is denied.

## BACKGROUND

        Plaintiff commenced this action by filing his complaint (the "Complaint") in New York

State Supreme Court, New York County on February 22, 2023.  Dkt. No. 1-1.  The Complaint

was served on Digital Currency Group, Inc. ("DCG") and Gemini Trust Company, LLC's

("Gemini," and with DGC, "Defendants") respective registered agents for service of process on

February 23, 2023.  Dkt. No. 1 ¶ 2.  Plaintiff alleges that Defendants committed actionable

violations of Sections 5, 12, and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C.

§§ 77e, 77l, and 77o.  Dkt. No. 1-1.  Plaintiff further alleges that DCG was a "control person" of

non-party Genesis Global Capital, LLC ("Genesis Global Capital") under Section 15 of the

Securities Act.  *Id.* ¶¶ 108–10.  He alleges that between February 2021 and November 2022,

Defendants operated a program, the "Gemini Earn" program, pursuant to which retail investors

would tender crypto assets to Genesis Global Capital in exchange for an agreement by Gemini and Genesis Global Capital that Genesis Global Capital would pay interest on those assets to investors.  *Id.* ¶¶ 3–4.  Pursuant to that agreement, retail investors obtained access to Genesis Global Capital, which otherwise only engaged in crypto asset transactions with large institutional and other accredited investors.  *Id.* ¶ 4.  Plaintiff alleges that the agreements are appropriately characterized as securities and that Gemini and Genesis Global Capital offered and sold unregistered securities through the Gemini Earn program in violation of Sections 5 and 12 of the Securities Act, *id.* ¶¶ 42–68, 99–104, and that DGC is liable as a control person, *id.* ¶¶ 69–72, 105–12.  In November 2022, Genesis Global Capital unilaterally announced that it would not allow hundreds of thousands of retail investors to withdraw their crypto assets from the Gemini Earn program because withdrawal requests exceeded current liquidity and, on January 20, 2023, Genesis Global Capital filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.  *Id.* ¶ 9.[1]  Plaintiff sues on behalf of investors who invested in the alleged securities offered by Gemini through the Gemini Earn program from approximately February 2021 to November 2022.  *Id.* ¶¶ 1, 93.

On March 9, 2023, DCG removed the action, with the consent of Gemini, to this Court.  Dkt. No. 1.[2]  On April 7, 2023, Plaintiff filed this motion to remand the case to state court with a memorandum of law and declaration in support.  Dkt. Nos. 23–25.  Defendants filed a

---

[1] According to Defendants, on January 19, 2023, Genesis Global Capital and its affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, with the United States Bankruptcy Court for the Southern District of New York.  The Chapter 11 cases are jointly administered under the caption *In re Genesis Global Holdco. LLC, et al.*, No. 23-bk-10063 (Bankr. S.D.N.Y.).  Dkt. No. 1 ¶ 5.

[2] Although removal under Section 1452(a) of Title 28 does not require the unanimous consent of the defendants, removal under Section 1441(a) does require such consent.  *See California Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004).

memorandum of law in opposition to the motion on April 21, 2023.  Dkt. No. 26.  Plaintiff filed

a reply memorandum in further support of the motion on April 28, 2023.  Dkt. No. 28.

Defendants argue that this Court has subject matter jurisdiction for two reasons: (1) the

state court action is an action related to a bankruptcy case properly removed pursuant to 28

U.S.C. §§ 1452(a), 1334(b); and (2) the state court action meets the requirements for federal

jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332, 1453, 1711–15.

The Court need only consider the first issue and concludes that Defendants have established that

the Court has "related to" bankruptcy jurisdiction.  It therefore denies the motion to remand

without considering the question of whether removal would be proper under CAFA.[3]

## DISCUSSION

A motion to remand for lack of subject matter jurisdiction may be brought at any time the

action is pending in federal court pursuant to 28 U.S.C. § 1447(c). The party seeking to remove

an action from state court to federal court bears the burden of proving federal jurisdiction.  *See*

*California Pub. Emps. Ret. Syst. v. WorldCom. Inc.*, 368 F.3d 86, 100 (2d Cir. 2004)

("*WorldCom*"); *accord United Food & Commercial Workers Union, Local 919, AFL-CIO v.*

*CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).  As a general

matter, "there is a presumption against removal, and uncertainties tend to weigh in favor of

remand." *Harraz v. EgyptAir Airlines Co.*, 2019 WL 6700946, at *2 (S.D.N.Y. Dec. 9, 2019).

"[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states, we must

---

[3] Courts are divided over whether CAFA permits removal of a state-court case alleging only
violations of the Securities Act.  *Compare Luther v. Countrywide Home Loans Servicing LP*, 533
F.3d 1031, 1034 (9th Cir. 2008) (holding that Securities Act claims are not removable under
CAFA), *with Owen v. Elastos Found.*, 438 F. Supp. 3d 187, 189–92 (S.D.N.Y. 2020) (holding
that Securities Act claims are removable under CAFA).

resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks and citation omitted).

Section 1452(a) of Title 28 of the United States Code provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). "[R]emoval jurisdiction . . . is 'determined by reference to the well-pleaded complaint.'" *D'Alessio v. New York Stock Exchange Inc.*, 258 F.3d 93, 100 (2d Cir. 2001) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

Section 1334(b) provides, with limited exceptions not relevant here, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Therefore, "the bankruptcy jurisdiction of federal courts is divided into three categories: 'those that arise under Title 11; those that arise in a Title 11 case; and those that are related to a case under title 11.'" *Worldview Entm't Holdings Inc. v. Woodrow*, 611 B.R. 10, 15–16 (S.D.N.Y. 2019) (quoting *Stern v. Marshall*, 564 U.S. 462, 473 (2011)).

Plaintiff does not dispute that the Complaint falls within the bankruptcy jurisdiction of the Court. Plaintiff alleges that Genesis Global Capital violated Sections 5 and 12(a)(1) of the Securities Act by selling investments in the Gemini Earn program, Dkt. No. 1-1 ¶ 107, and that DCG is liable as a control person because of Genesis Global Capital's violations of the Securities Act, *id.* ¶¶ 108–12. Under the federal securities laws, Defendants—if found liable to Plaintiff— would have a right of contribution as against Genesis Global Capital. *See* 15 U.S.C. § 77k(f)(1) (stating that under the Securities Act, "every person who becomes liable to make any payment

under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment").  "[I]t is apparent that contribution and indemnification claims can, in some circumstances, affect the administration of a bankrupt estate."  *WorldCom*, 368 F.3d at 104.  There also are "strong interconnections" between this action and the bankruptcy proceeding.  *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 321 (Bankr. S.D.N.Y. Mar. 3, 2003), *aff'd*, *WorldCom*, 368 F.3d 86.  In its amended voluntary petition for relief under Chapter 11 of the Bankruptcy Code, Genesis Global Capital and its affiliates identify, as creditors, "Various Lenders as defined in certain [Gemini Earn agreements] entered into with Gemini Trust Company, LLC, as agent for the Lenders."  *In re Genesis Global Holdco. LLC, et al.*, No. 23-bk-10063 (Bankr. S.D.N.Y.), Dkt. No. 27 at ECF p. 9.  Plaintiff alleges that he and members of the putative class suffered their losses when Genesis Global Capital first suspended the withdrawal of crypto assets and then filed for that bankruptcy protection, "imperiling the investment funds of the putative Class."  Dkt. No. 1-1 ¶ 9. Defendants have thus shown that this action would have at least a "conceivable effect on the bankruptcy estate," *SPV Osos Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018), sufficient to give rise to related to jurisdiction.  *See Sokola v. Weinstein*, 2020 WL 3605578, at *8–9 (S.D.N.Y. July 2, 2020).

Plaintiff's argument for remand rests on Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).  Dkt. No. 24.  That Section provides in relevant part as follows:

> The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. . . .  Except as provided in section 77p(c) of this title, no case arising under this subchapter and

5

brought in any State court of competent jurisdiction shall be removed to any court of the United States. . . .

15 U.S.C. § 77v(a).  The exception referenced above to the strict rule against removal in Section 22(a) was added to the statute by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227 (1998), and permits the removal of "covered class actions" based on the statutory or common law of any state or subdivision thereof, *see* 15 U.S.C. § 77p(c).[4]

Plaintiff argues that he is not asserting any claim based upon "the statutory or common law of any State" and that as a result, Section 22(a) explicitly bars removal of this action.  Dkt. No. 24 at 4.  Defendants counter that removal is proper under Section 1452(a) which provides in seemingly absolute terms that a party "may remove *any* claim or cause of action in a civil action" "if such district court has [bankruptcy] jurisdiction of such claim or cause of action."  28 U.S.C. § 1452(a); *see* Dkt. No. 26 at 4-14.

This case is governed, and Plaintiff's arguments are refuted, by the Second Circuit's decision in *WorldCom*, 368 F.3d 86.  In *WorldCom*, the Second Circuit considered the question presented here—whether the restriction against removal in Section 22(a) of the Securities Act overrode the right to removal contained in the bankruptcy removal statute—and concluded that the answer was no.  Under *WorldCom*, a case over which the district court has bankruptcy jurisdiction is removable to federal court notwithstanding that it alleges Securities Act claims and notwithstanding that Section 22(a) provides that Securities Act claims (with limited exception) shall not be removed to courts of the United States.  The Second Circuit recognized

---

[4] Section 16(c) of the Securities Act provides: "Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b)."  15 U.S.C. § 77p(c).  Subsection (b) "preempts a broad category of state law claims insofar as they are asserted in a securities class action."  *WorldCom*, 368 F.3d at 98.

that the two statutory provisions were in direct conflict.  "While the bankruptcy removal statute unambiguously states that any civil action brought by a private party in state court (or any court besides the United States Tax Court) may be removed to federal court if the action is related to a bankruptcy case, Section 22(a) of the [Securities] Act states, in equally unambiguous terms, that individual actions under the [Securities] Act may not be removed from state court."  *Id.* at 98.  The court nonetheless concluded that "the conflict between Section 22(a) of the Securities Act and the bankruptcy removal statute must be resolved in favor of bankruptcy removal."  *Id.* at 90.  The court reached that result based on a close reading of statutory language.  Although Section 1441(a), the general removal statute, contains prefatory language that civil actions of which the district courts would have original jurisdiction are removable "[e]xcept as otherwise expressly provided by Act of Congress," "Section 1452(a) contains no exception for federal claims that are expressly nonremovable under an Act of Congress."  *Id.* at 105.  The court thus drew the conclusion that while Section 22(a) "would arguably trump" a claim of removal under the general removal statute, *id.* at 102–03, 106, it would not trump a claim for removal under the bankruptcy removal statute, which permits the removal of "*any* claim or cause of action," *id.* at 106 (emphasis in original) (quoting 28 U.S.C. § 1452(a)).  To conclude otherwise would render "the key words '[e]xcept as otherwise expressly provided by Act of Congress' in Section 1441(a) . . . surplusage."  *Id*. (quoting 28 U.S.C. § 1441(a)).

The Second Circuit also based its conclusion in *WorldCom* on its application of the dictum from the United States Supreme Court's decision in *Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976).  In that case, the Supreme Court stated that where a more specific statute conflicts with a general statute that was subsequently enacted, the more specific statute governs over the general, except where application of the more specific statute would "unduly interfere"

with the operation of the general statute. *Id.* at 156. The Second Circuit rejected the notion that

Section 22(a) was more specific than the bankruptcy removal statute, *WorldCom*, 368 F.3d at

102, but it held that even if Section 22(a) were the more specific statute, its application would

interfere with the objective of the bankruptcy removal statute to grant the courts "comprehensive

jurisdiction" so that they could "deal efficiently and expeditiously with *all* matters connected

with the bankruptcy estate," *id.* at 103 (emphasis in original) (quoting *Celotex Corp. v. Edwards*,

514 U.S. 300, 308 (1995)). The Second Circuit observed:

> Were Section 22(a) construed to trump Section 1452(a), Section 22(a) could
> interfere with the operation of the Bankruptcy Code, especially in large chapter 11
> cases. . . . When a debtor seeks to reorganize . . . , its plan of reorganization must
> resolve all lawfully pending liabilities, and, to do so, the plan must marshal and
> allocate all of the debtor's assets. . . . Because, in any given case, the full amount
> of damages sought under the 1933 Act can be the basis for a claim against the estate,
> the policy underlying Section 1452(a) applies with full force to claims under the
> Act. Section 1452(a) dictates that these claims, when they are brought against
> defendants with contribution rights, should not be subject to conflicting outcomes
> along with repetitive and time-consuming discovery proceedings in multiple state
> courts.

*Id.* at 104 (internal citations omitted).

Plaintiff has two responses. Neither is persuasive. First, Plaintiff argues that *WorldCom*

is distinguishable because the court in that case held that an individual action was removable

whereas the claims in this case are brought on behalf of a putative class. Dkt. No. 24 at 9–10.

He notes that the Second Circuit in *WorldCom* referenced that the action being removed was an

individual one and stated that "nothing in the text or legislative history of SLUSA indicates that

Congress intended to alter the jurisdictional scheme applicable to *individual* actions under the

1933 Act." Dkt. No. 24 at 9 (quoting *WorldCom*, 368 F.3d at 104–05) (emphasis in *WorldCom*).

He thus infers that the court's decision in *WorldCom* must have been cabined to individual

actions and that a different result would apply if the removed action was a putative class action.

But Plaintiff's quote comes from a portion of the opinion in which the court *rejected* the

argument made by the *WorldCom* plaintiff that Section 22(a) should be given primacy over the more recently-enacted Section 1452(a) because the former statute was amended by SLUSA in 1998.  That the amendment to Section 22(a) made by SLUSA was intended to expand federal jurisdiction over state-court class actions, as the Circuit concluded, *see Worldcom*, 368 F.3d at 104–05, does not mean that the 1998 amendment should be read to permit removal of individual actions but not class actions.  The Circuit's point was that the 1998 amendment should not be read to restrict federal jurisdiction or to "implicitly *contrac[t]* federal jurisdiction by reversing, without comment in either text or legislative history, the bankruptcy removal statute's effect on the prior removal scheme."  *Id.* (emphasis in original) (internal citations omitted).  That prior removal scheme, as the court persuasively demonstrated in *WorldCom*, permitted the removal of any claim within the district court's bankruptcy jurisdiction without regard to whether it was brought under the Securities Act.  That conclusion was not based on any distinctive characteristics about individual actions that would make them more removable to federal court than class actions.  It was based on the language of Section 1452(a) as compared to Section 1441(a), and on the conclusion that reading Section 22(a) to preclude removal of Securities Act claims pending in state court would unduly interfere with operation of the Bankruptcy Code.  Those conclusions are indifferent to whether the claim was brought on behalf of an individual, as in *WorldCom*, or brought by an individual on behalf of a class, as in this case.  Indeed, the reasons the Circuit Court identified for why Securities Act claims have to be removable when related to a bankruptcy have even greater force here, when a claim is brought on behalf of a putative class, than when a claim is brought on behalf of an individual.  *See id*. at 103–04 (describing the effect from interference with operation of the Bankruptcy Code).

Second, Plaintiff argues that "the Second Circuit's decision in *WorldCom* is no longer good law" in light of the decision of the United States Supreme Court in *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 138 S. Ct. 1061 (2018).  Dkt. No. 24 at 6, 10–11.  In making this argument, however. Plaintiff faces a tall task. "[A] district court must follow a precedential opinion of the Second Circuit 'unless and until it is overruled . . . by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.'"  *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 653 (S.D.N.Y. 2021) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017)); *see also Perez v. City of New York*, 2022 WL 4236338, at *14 (S.D.N.Y. Sept. 14, 2022); *Loughlin v. Goord*, 558 F. Supp. 3d 126, 142 (S.D.N.Y. 2021), *aff'd*, 2022 WL 9575656 (2d Cir. Oct. 17, 2022).

The Second Circuit's *WorldCom* decision has not been overruled.  Moreover, the Supreme Court's decision in *Cyan* does not undermine its reasoning, much less lead to the conclusion that it will almost inevitably be overruled.  "[T]he issue before the Court in *Cyan* related solely to the interpretation of SLUSA, specifically the question of whether SLUSA stripped state courts of their jurisdiction over Securities Act class actions or authorized the removal of class actions alleging only violations under the Act."  *Owen v. Elastos Found.*, 438 F. Supp. 3d 187, 193 (S.D.N.Y. 2020).  Specifically, the Court in *Cyan* considered the questions of whether the language in SLUSA explicitly prohibiting a party from pursuing in state court a "covered class action" based on state law should be read to also prohibit a party from pursuing in state court a "covered class action" based on the Securities Act and, if not, whether the exception that SLUSA added to Section 22(a) permitting the removal of certain covered class actions should be read to include class actions brought under the Securities Act.  The Court answered

both questions in the negative.  The Court rejected the argument of the defendant that reading

SLUSA to permit Securities Act class actions to go forward in state court would defeat a

principal objective of the Act—to "dives[t] state courts of jurisdiction over all sizable 1933 class

actions."  *Cyan*, 138 S. Ct. at 1072.  SLUSA's objective of preventing state court plaintiffs from

evading the provisions of the Private Securities Litigation Reform Act of 1995 ("Reform Act")

did not "depend on stripping state courts of jurisdiction over 1933 Act class suits," because

"wherever those suits go forward, the Reform Act's substantive protections necessarily apply."

*Id.* at 1072–73.  Moreover, there was a "long and unusually pronounced tradition of according

authority to state courts over 1933 Act litigation."  *Id.* at 1073; *see also id.* at 1071 ("When

Congress passed SLUSA, state courts had for 65 years adjudicated all manner of 1933 Act cases,

including class actions.").  The argument that the language of Section 22(a), as amended,

permitted the removal of Securities Act class actions as well as state-law class actions ran

aground of the plain language of the statute and Supreme Court precedent.  The most

"straightforward reading" of the provisions addressing removal under the Securities Act was that

removal was limited to the actions precluded by SLUSA—actions brought under state law and

not under federal law.  *Id.* at 1076; *see also id.* at 1069 ("[T]he section says nothing, and so does

nothing, to deprive state courts of jurisdiction over class actions based on *federal* law."

(emphasis in original)).

Neither the reasoning nor the result in *Cyan* is inconsistent with the Second Circuit's

decision in *WorldCom*.  Plaintiff focuses on the language recognizing the authority of state

courts to address Securities Act claims.  But that language arose in the context of explaining why

Congress might not have wanted to preclude all Securities Act class actions filed in state court.

It says nothing about whether Congress intended to preclude removal of the limited subset of

state-court Securities Act actions that were related to a federal bankruptcy case.  Moreover, while

the Supreme Court in *Cyan* declined to read into Section 22(a) an express permission to remove

a Securities Act claim from state court, *id*. at 1075–76, the Second Circuit's decision in

*WorldCom* presumed that Section 22(a), on its face, precluded removal of Securities Act claims

pending in state court, *see WorldCom*, 368 F.3d at 97.  The Court ruled that Securities Act claims

otherwise non-removable under Section 22(a) nonetheless were removable under Section

1452(a) because—in a contest between the conflicting plain language of the two statutes—

Section 1452(a) prevailed.

Plaintiff's argument that Section 22(a) is more specific than Section 1452(a), and should

therefore govern in the case of a conflict between the two provisions, is likewise unpersuasive.

*See* Dkt. No. 24 at 7–8.  The Second Circuit considered this issue and rejected Plaintiff's

argument.  It stated:

> [T]he class of claims covered by Section 22(a) is no more specific than the class of
> claims covered by Section 1452(a).  Section 22(a) does not cover only a subset of
> the claims covered by Section 1452(a).  By the same token, Section 1452(a) does
> not cover only a subset of the claims covered by Section 22(a).  Rather, just as
> Section 1452(a) applies to many claims that are not brought under the 1933 Act,
> Section 22(a) applies to many claims that are not "related to" a bankruptcy.

*WorldCom*, 368 F.3d at 102.  Plaintiff relies to the contrary on the decisions of the United States

District Courts for the Middle District of Tennessee in *Tenn. Consol. Ret. Sys. v. Citigroup, Inc.*,

2004 U.S. Dist. LEXIS 24043, at *13 (M.D. Ten. Oct. 12, 2004) ("*Tennessee Consolidated*") and

the Southern District of Illinois in *Ill. Mun. Ret. Fund v. Citigroup, Inc.*, 2003 U.S. Dist. LEXIS

16255, at *6 (S.D. Ill. Sep. 9, 2003), and on the Ninth Circuit's decision in *Luther v.

Countrywide Home Loans Servicing, LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).  *See* Dkt. No. 24

at 8.  The *WorldCom* court, however, considered and rejected the reasoning in the first two

decisions, *see WorldCom*, 368 F.3d at 99–100, and *Luther* is not binding on this Court.

12

Plaintiff also argues that the Court should disregard the Second Circuit's holding in *WorldCom* because just as Section 22(a) would unduly interfere with Section 1452(a) and the Bankruptcy Code, so too would Section 1452(a), as applied to Securities Act claims, interfere with Section 22(a). Dkt. No. 24 at 8–9. But the Circuit addressed the question of whether application of Section 22(a) would unduly interfere with Section 1452(a) only as an alternative basis for its decision, and only after concluding that Section 22(a) was not more specific than Section 1452(a). The court concluded that, even if Section 22(a) was more specific than Section 1452(a), "because Section 22(a) could interfere with the operation of the Bankruptcy Code, it would not *necessarily* control." *WorldCom*, 368 F.3d at 104 (emphasis added). Plaintiff does not dispute the conclusion of *WorldCom* that removal of state-court Securities Act claims would be essential to the efficient and expeditious administration of the bankruptcy estate. *Id.* at 103–04. Nor does he identify any language in *Cyan* that is inconsistent with the Second Circuit's holding.

Next, relying against on *Tennessee Consolidated*, Plaintiff argues that Section 22(a) as amended by SLUSA is the more recently adopted statute, and that in amending Section 22(a), Congress did not add language to that provision regarding the removal of cases that were related to bankruptcy cases. Dkt. No. 24 at 10–11. But, as noted, the Second Circuit considered and rejected *Tennessee Consolidated*. *See WorldCom*, 368 F.3d at 99–100. Congress did not have to amend Section 22(a) to allow for removal of Securities Act cases over which district courts have bankruptcy jurisdiction, because Section 1452(a) already led to that result. Nor can Plaintiff benefit from the Supreme Court's statement in *Cyan* that, in adopting SLUSA, Congress intended to preserve the removal ban for actions (including class actions) asserting claims only under the Securities Act. Dkt. No. 24 at 11. *Cyan* considered only SLUSA. The *WorldCom*

court based its determination, not only on the language of Section 22(a), but also on the language of Section 1452(a), and a comparison of that provision to Section 1441(a).

Finally, Plaintiff takes direct aim at *WorldCom*, with only the slightest glance at *Cyan*, in arguing that, while the *WorldCom* court was concerned that prohibiting removal would do violence to the statutory scheme and render the introductory clause of Section 1441(a) surplusage, the court's result would have the effect of doing violence to Section 22(a) and its "except as provided" clause. Dkt. No. 24 at 12. In his view, Congress could have added an additional "except" clause to Section 22(a) to address "related to" bankruptcy cases, and Congress's failure to do so should lead to the inference that it did not intend such actions to be removable under Section 1452(a). But the Supreme Court answered that question indirectly in *Cyan*. Congress enacted the removal provisions out of concern that state courts would not adequately enforce the state-law class-action prohibition and "so that a federal court could act as a backstop and order a class action's dismissal." *Cyan*, 138 S. Ct. at 1078. Nothing in *Cyan* suggests that the Court intended the removal provisions to be read to permit a state-court class action that was related to a bankruptcy case to be immune from removal, so long as it alleged only a federal claim.

## CONCLUSION

The motion to remand is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 23.

SO ORDERED.

Dated: May 15, 2023
New York, New York
                                    _____
                                            LEWIS J. LIMAN
                                      United States District Judge