**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOBIAS MOELLER-BERTRAM, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GEMINI TRUST COMPANY, LLC; and DIGITAL CURRENCY GROUP, INC.,<br><br>Defendants. | Case No. 1:23-cv-02027<br><br>Hon. Lewis J. Liman |

**MEMORANDUM OF LAW IN SUPPORT OF DIGITAL CURRENCY GROUP, INC.'S**
**MOTION TO TRANSFER TO THE DISTRICT OF CONNECTICUT**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000

*Attorneys for Defendant Digital Currency Group, Inc.*

Dated: May 23, 2023

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ... 1

BACKGROUND ... 2

I. The Parties ... 2

II. The *McGreevy* Action ... 3

III. The Current Action ... 3

ARGUMENT ... 5

I. Transfer To The District Of Connecticut Is Appropriate Pursuant To 28 U.S.C. 1404(A) ... 5

A. Venue And Jurisdiction Are Proper In The District Of Connecticut ... 5

B. Transfer Promotes The Interest Of Justice By Facilitating Consolidation With A Duplicative Action In The First-Filed Forum ... 6

C. Plaintiff Cannot Rebut The Strong Presumption Requiring Transfer To The First-Filed Forum ... 9

CONCLUSION ... 13

**TABLE OF AUTHORITIES**

**Cases**

*1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*,
2021 WL 3115125 (S.D.N.Y. July 20, 2021) ....................11

*Aerotel, Ltd. v. Sprint Corp.*,
100 F. Supp. 2d 189 (S.D.N.Y. 2000) ....................10

*Aguiar v. Natbony*,
2011 WL 1873590 (S.D.N.Y. May 16, 2011) ....................6

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
49 F. Supp. 2d 664 (S.D.N.Y. 1999) ....................6

*Berisford Cap. Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*,
677 F. Supp. 220 (S.D.N.Y. 1988) ....................11

*Casden v. HPL Techs., Inc*,
2003 WL 27164914 (N.D. Cal. Sept. 29, 2003) ....................7

*Chan v. iSpot, Inc.*,
2021 WL 2480881 (S.D.N.Y. June 17, 2021) ....................5

*Clean Vehicle Sols. Am. LLC v. Carrollton Exempted Vill. Sch. Dist. Bd. of Educ.*,
2015 WL 5459852 (S.D.N.Y. Sept. 2, 2015) ....................11, 13

*In re CMED Sec. Litig.*,
2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ....................7

*Colonomos v. Ritz-Carlton Hotel Co.*,
2002 WL 732113 (S.D.N.Y. Apr. 25, 2002) ....................5

*Crowe v. JPMorgan Chase & Co.*,
2009 WL 3852381 (S.D.N.Y. Nov. 18, 2009) ....................7

*Eichenholtz v. Brennan*,
677 F. Supp. 198 (S.D.N.Y. 1988) ....................12

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008) ....................10

*Flood v. Carlson Rests. Inc.*,
94 F. Supp. 3d 572 (S.D.N.Y. 2015) ....................12

*Goggins v. All. Cap. Mgmt.*,
279 F. Supp. 2d 228 (S.D.N.Y. 2003) ....................6, 8

*Iconic IP Holdings, L.L.C. v. Gerrit's Brands, Inc.*,
2021 WL 7543607 (E.D.N.Y. May 21, 2021) ....................13

*Lewis-Gursky v. Citigroup, Inc.*,
2015 WL 8675449 (S.D.N.Y. Dec. 11, 2015) ....................12, 13

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014)....................7

*Mattel, Inc. v. Louis Marx & Co.*,
353 F.2d 421 (2d Cir. 1965)....................6

*McCain v. Rahal Letterman Racing, LLC*,
2007 WL 2435170 (S.D.N.Y. Aug. 27, 2007)....................7, 8, 9

*Oleg Cassini, Inc. v. Serta, Inc.*,
2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) ....................11

*Pem Am., Inc. v. Lambert*,
2003 WL 22383369 (S.D.N.Y. Oct. 17, 2003) ....................9

*Reliance Ins. Co. v. Six Star, Inc.*,
155 F. Supp. 2d 49 (S.D.N.Y. 2001)....................10

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
322 F. Supp. 2d 505 (S.D.N.Y. 2004)....................9

*Scholastic, Inc. v. Daemmrich*,
2017 WL 2484206 (S.D.N.Y. June 8, 2017) ....................7

*Tex. Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co.*,
315 F. Supp. 3d 814 (S.D.N.Y. 2018)....................8

*Truk Int'l Fund, LP v. Wehlmann*,
2009 WL 1456650 (S.D.N.Y. May 20, 2009) ....................5

*Tyree v. Tchrs. Ins. & Annuity Ass'n Coll. Ret. Equities Fund*,
1993 WL 205859 (S.D.N.Y. June 9, 1993) ....................6

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
2014 WL 1087960 (S.D.N.Y. Mar. 19, 2014) ....................7, 9
*U.S. Sec. Holdings, Inc. v. Andrews*,
2021 WL 796687 (S.D.N.Y. Mar. 2, 2021) ....................8

*Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*,
2012 WL 5512164 (S.D.N.Y. Nov. 14, 2012)....................12

*Wilson v. DirectBuy, Inc.*,
821 F. Supp. 2d 510 (D. Conn. 2011) ........ 12

*Wyndham Assocs. v. Bintliff*,
398 F.2d 614 (2d Cir. 1968) ........ 6, 8

**Statutes**

15 U.S.C. § 77v ........ 6

15 U.S.C. § 78u-4 ........ 1

15 U.S.C. § 78aa ........ 6

28 U.S.C. § 1332 ........ 4

28 U.S.C. § 1334 ........ 4

28 U.S.C. § 1391 ........ 6

628 U.S.C. § 1404 ........ 1, 5, 13

28 U.S.C. § 1446 ........ 4

28 U.S.C. § 1452 ........ 4

28 U.S.C. § 1453 ........ 4

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(A) ........ 12

Pursuant to 28 U.S.C. § 1404(a), Defendant Digital Currency Group, Inc. ("DCG")[1] respectfully requests that this action be transferred to the United States District Court for the District of Connecticut to be consolidated with a related action pending in that court.

## PRELIMINARY STATEMENT

Plaintiff seeks to prosecute a class action securities lawsuit against DCG and Gemini on behalf of participants in the Gemini Earn program under Section 15 of the Securities Act for violations of Sections 5 and 12.  These claims are not new—over a month *prior* to the filing of Plaintiff's action, five other plaintiffs filed a class action asserting identical claims in the District of Connecticut.  *See* Ex. A (Compl., *McGreevy v. Digital Currency Grp., Inc.*, No. 3:23-cv-00082-SRU (D. Conn. Jan. 23, 2023), ECF No. 1.  The *McGreevy* action overlaps substantially with Plaintiff's action:  The actions arise from the same nucleus of facts, presenting overlapping legal issues and proposing identical class definitions; they reference many of the same entities and individuals; and they both assert control-person liability against DCG for primary violations by Genesis Global Capital, Inc. ("Genesis").

Second Circuit law provides clear guidance in such cases:  Related cases should be transferred to a single venue in order to promote judicial efficiency and avoid conflicting decisions, and the "first-filed" rule requires that the later-filed action be transferred to the forum of the earlier-filed action.  The burden is on the plaintiff to demonstrate that exceptional circumstances justify departing from this established rule.  There are no such exceptional circumstances here—New York is no more convenient a forum than Connecticut, and consolidation of overlapping cases is essential to the administration of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* 15 U.S.C. § 78u-4(a)(3)B(ii).  That is particularly true here, where the related

---

[1] Defendant Gemini Trust Company, LLC takes no position on this motion.

action in the District of Connecticut involves the precise same proposed class and has already had a lead plaintiff appointed.

This Court recently confirmed that this case belongs in federal court. Given the substantial overlap between this case and the earlier filed *McGreevy* action, the actions need to be consolidated into a single federal forum in order to proceed efficiently and avoid the risk of duplicative or conflicting results. DCG has no preference as to which federal forum the cases ultimately end up in. DCG first sought consent from the *McGreevy* plaintiffs to transfer the Connecticut case to this Court; the Connecticut plaintiffs refused. As a result, DCG now seeks transfer to the District of Connecticut because that is the forum preferred under binding precedent. Under the circumstances, the fact that there is a related bankruptcy proceeding pending in this forum is not sufficient to overcome the first-filed rule. Accordingly, the Court should transfer this action to the District of Connecticut for consolidation with the *McGreevy* action.

## BACKGROUND

### I. The Parties

Between February 2021 through November 2022, Plaintiff participated in the "Gemini Earn" program, in which he loaned digital assets to non-party Genesis in exchange for regular interest payments. Compl. ¶¶ 1, 3. Upon information and belief, Plaintiff resides in California.

Defendant DCG is an investment corporation and the parent entity and sole owner of Genesis. Since the first quarter of 2022, Defendant DCG's principal place of business is Stamford, Connecticut. *See* Compl. ¶ 16; *see* Ex. A ¶ 46. Defendant Gemini is a New York limited liability trust company, which, along with Genesis, established the Gemini Earn Program. Gemini's principal place of business is New York, New York. Compl. ¶ 15.

## II. The *McGreevy* Action

On January 23, 2023, a group of individual and institutional digital asset lenders commenced a putative securities class against DCG and DCG's CEO, Barry Silbert in the District of Connecticut. *See generally* Ex. A. The *McGreevy* plaintiffs allege that from February 2, 2021 through November 16, 2022, they loaned digital assets to non-party Genesis through: (i) Genesis's Institutional Lending Program pursuant to a Master Borrow Agreement; and (ii) the Gemini Earn Program, established by non-party Gemini, pursuant to a tri-party Master Digital Asset Loan Agreement between lenders, Gemini, and Genesis. *Id.* ¶¶ 1, 76, 84, 92. The crux of the *McGreevy* plaintiffs' claims are (1) that these lending agreements constitute securities that should have been registered with the SEC and (2) that DCG entered into a transaction with Genesis—the assumption of a $1.1 billion promissory note—to facilitate Genesis's efforts to conceal its insolvency and ensure the viability of its lending programs. *Id.* ¶¶ 125–37, 162–91. The *McGreevy* plaintiffs assert control-person liability against DCG and Silbert under (i) Section 15 of the Securities Act for Genesis's purported violations of Sections 5 and 12(a)(1), and (ii) Section 20(a) of the Exchange Act for Genesis's purported violations of Section 10(b). *Id.* ¶¶ 1, 29, 192–201.

On April 25, 2023, William McGreevy, Ashwin Gowda, Translunar Crypto, LP, Christopher Buttenham, and Remo Maria Morone were appointed as Lead Plaintiffs in the *McGreevy* action. *See McGreevy* Docket, ECF No. 43.

## III. The Current Action

Following on the heels of the *McGreevy* action, on February 22, 2023, Plaintiff brought this securities class action against Defendants DCG and Gemini in the New York State Supreme Court for New York County. Plaintiff's proposed class is coextensive with the proposed class in

the *McGreevy* action—comprising all participants in the Gemini Earn program from its inception.[2] Plaintiff's claims for relief are duplicative of the *McGreevy* action, as they assert control-person liability against DCG under Section 15 of the Securities Act for Genesis's purported violations of Sections 5 and 12(a)(1). *Compare* Compl. ¶¶ 105–12, *with* Ex. A ¶¶ 217–34.[3] And the allegations by which Plaintiff seeks to establish DCG's control of Genesis for its Section 15 claim are the same as in the *McGreevy* action: (1) the alleged "sham" $575 million loan from DCG to Genesis to prop up the Grayscale Bitcoin Trust, *compare* Compl. ¶¶ 73–83, *with* Ex. A ¶¶ 138–61, 200, and (2) DCG's assumption of a $1.1 billion promissory note to allegedly facilitate Genesis's efforts to conceal its insolvency and ensure its continued operations, *compare* Compl. ¶¶ 73, 84–92, *with* Ex. A ¶¶ 162–91, 201.

On March 9, 2023, DCG timely removed this action, with Gemini's consent, to this Court pursuant to the Bankruptcy Code, 28 U.S.C. §§ 1334(b), 1452(a), and the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1446, 1453(b). On May 15, this Court denied Plaintiff's motion to remand this action to state court, relying solely on the provision for removal of cases to federal court where they are "related to" a case arising under the Bankruptcy Code. *See Moeller-Bertram* Docket, ECF No. 29.

---

[2] *Compare* Compl. ¶ 93 ("Plaintiff brings this action…on behalf of the Class, who invested in the 'Gemini Earn' program offering (the Offering) conducted between approximately February 2021 and November 2022 (the Class Period), and who were damaged thereby."), *with* Ex. A ¶ 203 ("All persons or entities who participated in the Lending Programs from inception to November 16, 2022 (the "Unregistered Securities Offering"))."

[3] Plaintiff also asserts a direct claim against Gemini for violations of Sections 5 and 12(a)(1) of the Securities Act. Compl. ¶¶ 99–104. The addition of Gemini as a defendant does not change the overarching legal and factual question presented by this action. The basis for Plaintiff's direct claim against Gemini—that it was a party to the tripartite Gemini Earn lending agreements—is the very same basis for Plaintiff's (and the *McGreevy* action's) control claim against DCG, namely, that DCG controlled an entity, Genesis, that was a party to the tripartite Gemini Earn lending agreements.

## ARGUMENT

### I. Transfer To The District Of Connecticut Is Appropriate Pursuant To 28 U.S.C. 1404(A)

This Court may transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The purpose of § 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Colonomos v. Ritz-Carlton Hotel Co., LLC,* 2002 WL 732113, at *8 (S.D.N.Y. Apr. 25, 2002) (citation and quotation marks omitted).

"In considering whether to grant a venue transfer, courts engage in a two-part test: (1) whether an action 'might have been brought' in the proposed transferee forum, and, if so, (2) whether the transfer promotes convenience and justice." *Chan v. iSpot, Inc.*, 2021 WL 2480881, at *2 (S.D.N.Y. June 17, 2021). Because both prongs of this test are easily satisfied here, the Court should transfer this action to the District of Connecticut.

#### A. Venue And Jurisdiction Are Proper In The District Of Connecticut

There is no question Plaintiff could have brought this action in the District of Connecticut. Defendants are subject to personal jurisdiction in the District of Connecticut because DCG's principal place of business is in Connecticut, Compl. ¶ 16, and Defendants are all residents of the United States, *see Truk Int'l Fund, LP v. Wehlmann,* 2009 WL 1456650, at *2 (S.D.N.Y. May 20, 2009) ("Under the federal securities acts . . . federal courts have personal jurisdiction over any defendant who is a United States resident or otherwise has minimum contacts with the United States.") (citation omitted). Further, venue is proper also because DCG's principal place of business is in Connecticut, Compl. ¶ 16, and because many of the events giving rise to this action, including DCG's assumption of the $1.1 billion promissory note, took place in Connecticut, *see*

28 U.S.C. § 1391(b) (venue proper in the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"); 15 U.S.C. §§ 77v(a) & 78aa(a) (venue proper where a defendant "is found or is an inhabitant or transacts business").

### B. Transfer Promotes The Interest Of Justice By Facilitating Consolidation With A Duplicative Action In The First-Filed Forum

Transferring this action to the District of Connecticut promotes the interest of justice, because the *McGreevy* action is the "first-filed" action and consolidation will ensure "that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968); *see Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423 (2d Cir. 1965) [I]t has long been held in this circuit, that, as a principle of sound judicial administration, the first suit should have priority[.]").

"[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Aguiar v. Natbony,* 2011 WL 1873590, at *10 (S.D.N.Y. May 16, 2011) (alteration in original) (citation omitted); *see Goggins v. All. Cap. Mgmt.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) ("The *single most significant* circumstance favoring transfer . . . is the existence of [a] related action[] in [the transferee forum]." (emphasis added)); *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999) (holding that "the existence of [similar litigation] in the transferee court weighs heavily towards transfer"). This is because "[t]he interest of justice will obviously be served by resolving all issues in one forum." *Tyree v. Tchrs. Ins. & Annuity Ass'n Coll. Ret. Equities Fund*, 1993 WL 205859, at *2 (S.D.N.Y. June 9, 1993).

This Circuit's strong presumption in favor of litigating related cases in a single forum conforms with the PSLRA's preference for uniform adjudication of related cases. *See In re CMED Sec. Litig.*, 2012 WL 1118302, at *1 (S.D.N.Y. Apr. 2, 2012) ("The PSLRA provides that where. . . there is more than one action of a class with the same claims, the court shall first decide whether the actions should be consolidated."). This preference reflects the recognition that "the interests of judicial economy are particularly strong in securities class actions." *Casden v. HPL Techs., Inc*, 2003 WL 27164914, at *1 (N.D. Cal. Sept. 29, 2003); *see Crowe v. JPMorgan Chase & Co.*, 2009 WL 3852381, at *4 (S.D.N.Y. Nov. 18, 2009) ("Courts have routinely consolidated individual securities actions with class actions, given the obvious benefits in terms of efficiency and judicial economy.").

This case is unquestionably "related" to the *McGreevy* action. Indeed, this case raises the same claims, predicated on the same allegations, as the *McGreevy* action. Like this case, the *McGreevy* action asserts claims for violations of Sections 5, 12 and 15 of the Securities Act.[4] Like this case, the *McGreevy* action arises from a Genesis lending program—the Gemini Earn program—and is asserted on behalf of all persons who participated in the program during the very

[4] Although plaintiffs in the *McGreevy* action assert additional claims under the Exchange Act, those Exchange Act claims arise from the same underlying conduct as the conduct forming the bases for the Securities Act claims—allegations that DCG, through its control of Genesis, facilitated Genesis's offer and sale of unregistered securities, and caused Genesis to mislead its investors regarding Genesis's solvency.

In any event, application of the first-filed rule "does not require identical lawsuits." *Scholastic, Inc. v. Daemmrich*, 2017 WL 2484206, at *2 (S.D.N.Y. June 8, 2017). So long as the two lawsuits share "substantially similar parties and claims" the first-filed rule governs and transfer is presumptively warranted. *See, e.g.*, *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014) (first-filed rule applied despite non-overlapping parties and claims); *U.S. ex rel. Cestra v. Cephalon, Inc.*, 2014 WL 1087960, at *4–6 (S.D.N.Y. Mar. 19, 2014) (same); *McCain v. Rahal Letterman Racing, LLC*, 2007 WL 2435170, at *2 (S.D.N.Y. Aug. 27, 2007) (same).

same class period. And like this case, the *McGreevy* action alleges that: (1) the Gemini Earn program lending agreements pursuant to which Plaintiff issued loans to Genesis were unregistered securities; (2) Genesis concealed its insolvency from investors; and (3) DCG is liable as a "control person" for Genesis's purported misconduct.

Given the substantial overlap between the two actions, the parties will have to seek testimony from common entities and individuals; proceeding in two different forums is inefficient and will squander limited party and judicial resources. Likewise, both cases present the threshold issue of whether the Gemini Earn lending agreements are unregistered securities, and adjudicating these two cases separately runs the risk of inconsistent resolution of this fundamental threshold issue. *See Goggins*, 279 F. Supp. 2d at 235 ("transfer . . . is necessary to. . . avoid the potential for inconsistent judgments" (citation omitted)). Thus, these competing actions are ripe for transfer and consolidation—the only question is in which District.

Where—as here—the related action in the transferee forum was filed first, the "first-filed" rule weighs strongly (and often decisively) in favor of transfer to the first-filed forum. *See McCain*, 2007 WL 2435170, at *2 ("[W]hen two district courts concurrently have before them actions involving substantially or effectively the same parties and issues, there is a strong presumption in favor of transfer to the forum of the first-filed suit."). Consistent with this Circuit's (and the PSLRA's) overarching policy to "litigat[e] . . . related claims in the same tribunal," *Wyndham Assocs.*, 398 F.2d at 619, the first-filed rule "is designed to avoid duplication of judicial effort . . . and eliminate the risk of inconsistent adjudication," *U.S. Sec. Holdings, Inc. v. Andrews*, 2021 WL 796687, at *10 (S.D.N.Y. Mar. 2, 2021) (citation and quotation marks omitted). Accordingly, courts routinely transfer later-filed actions to the forum of the related, earlier-filed action. *See, e.g.*, *Tex. Health Mgmt. LLC v. HealthSpring Life & Health Ins. Co. LLC*, 315 F.

Supp. 3d 814, 816 (S.D.N.Y. 2018); *U.S. ex rel. Cestra*, 2014 WL 1087960, at *1; *McCain*, 2007 WL 2435170, at *4 (S.D.N.Y. Aug. 27, 2007).

Indeed, application of the first-filed rule is particularly appropriate here given that the *McGreevy* action is procedurally more advanced than this Action. The court has already appointed a Lead Plaintiff in the *McGreevy* action. Plaintiff alleges the exact same proposed class here, meaning that allowing this action to proceed independently of the *McGreevy* action would require a duplicate process for appointment of a Lead Plaintiff and would engender significant inefficiency.[5]

Thus, because the *McGreevy* action was filed prior to this action, the first-filed rule directs the Court to transfer this action to the District of Connecticut to facilitate "a comprehensive disposition" of both actions which will "conserve[] judicial resource [and] avoid[] duplicative or conflicting results." *Pem Am., Inc. v. Lambert*, 2003 WL 22383369, at *2 (S.D.N.Y. Oct. 17, 2003).

### C. Plaintiff Cannot Rebut The Strong Presumption Requiring Transfer To The First-Filed Forum

In light of the strong presumption of the first-filed rule, Plaintiff bears the "heavy burden," *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 507–10 (S.D.N.Y. 2004), of articulating "a sound reason . . . that would make it unjust or inefficient to continue the first-filed action," *McCain*, 2007 WL 2435170, at *2 (citation and quotation marks omitted). "Otherwise, the second suit must . . . be transferred[.]" *Id.* To avoid this outcome, Plaintiff must establish one of only two narrow exceptions: (1) that "special circumstances . . . justify giving priority to the second [action]; or (2) that the "balance of convenience [is] in favor of the second action." *Aerotel,*

[5] Notably, Plaintiff did not participate in the *McGreevy* action's lead plaintiff appointment process.

*Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 195 (S.D.N.Y. 2000) (citation and quotation marks omitted). Here, neither exception applies.

*First*, the Second Circuit has identified "only a limited number" of special circumstances that warrant divergence from the first-filed rule. *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) ("[T]he special circumstances in which a district court may dismiss the first-filed case . . . are quite rare." (quotation marks omitted)). Typically, special circumstances arise only where (i) the first-filed suit is "an improper anticipatory declaratory judgment action" or (ii) "forum shopping *alone* motivated the choice of situs for the first suit." *See id.* at 275–76 (citation and quotation marks omitted). Neither situation arises here. The *McGreevy* action is not an improper anticipatory declaratory judgment action (or a declaratory judgment action at all). Further, "[f]orum shopping justifies an exception to the first-filed rule only where a suit bears only a slight connection to the [forum]," *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) (second alteration in original) (citations and quotation marks omitted); but DCG, this action's primary defendant, is headquartered in Connecticut. And given that both the Southern District of New York and the District of Connecticut are bound by Second Circuit precedent, the two Districts share a body of legal precedent governing adjudication of federal securities fraud claims. Thus, there is no credible claim that forum shopping was the *sole* motivation for the *McGreevy* plaintiffs' decision to file suit in Connecticut.

*Second*, the balancing of convenience does not overcome the first-filed rule here. In assessing the balance of convenience, courts consider the following factors: (1) convenience of the parties; (2) location of relevant documents and ease of access to evidence; (3) the locus of operative facts; (4) the relative means of the parties; (5) availability of process to compel the attendance of unwilling witnesses; (6) the convenience of witnesses; and (7) plaintiff's choice of

forum. *See Oleg Cassini, Inc. v. Serta, Inc.*, 2012 WL 844284, at *8 (S.D.N.Y. Mar. 13, 2012). Even where the convenience factors are "even or inconclusively tilted," the first-filed rule still applies in full force. *See Berisford Cap. Corp. v. Cent. States, Se. & Sw. Areas Pension Fund*, 677 F. Supp. 220, 225 (S.D.N.Y. 1988) ("While in some ways this is a close case, I nevertheless conclude that Berisford has not succeeded in overcoming the presumption that favors the first-filed rule."). Instead, to rebut the presumption of transfer, Plaintiff must establish that the balance of convenience "convincingly favors" remaining in the Southern District of New York. *See Clean Vehicle Sols. Am. LLC v. Carrollton Exempted Vill. Sch. Dist. Bd. of Educ.*, 2015 WL 5459852, at *5 (S.D.N.Y. Sept. 2, 2015). He cannot, and in fact, the factors for balancing convenience actually *favor* transfer to the District of Connecticut

The convenience of the parties favors transfer. Neither Plaintiff nor DCG resides in New York. DCG's headquarters are located in Connecticut, and Plaintiff, upon information and belief, resides in California. Because "the transferee forum is the [defendant's] principal place of business and the [plaintiff] is located outside of both the transferor and the transferee forums," this factor favors transfer to Connecticut. *See 1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*, 2021 WL 3115125, at *5 (S.D.N.Y. July 20, 2021).

The location of the documents and the locus of operative facts support transfer to the District of Connecticut. The gravamen of Plaintiff's action is that DCG is liable as a control person of Genesis for Genesis's alleged breach of securities registration requirements. Substantiating this bold allegation of control will require extensive discovery from DCG, whose documents are located in Connecticut. For the same reason, the locus of operative facts factor favors transfer to Connecticut. If Plaintiff cannot establish DCG's control of Genesis, his claim against DCG fails. Given that DCG's principal place of business was located in Connecticut for a substantial portion

of the class period—including during the execution of the allegedly fraudulent promissory note—the locus of operative facts concerning DCG's purported control of Genesis is Connecticut.

The relative means of the parties, the subpoena power of the respective courts, and the convenience of witnesses are neutral. Plaintiff resides outside of this forum, and, given the two Districts' proximity—60 miles apart—the difference in costs for travel to Connecticut versus New York is insignificant. *See Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 580 (S.D.N.Y. 2015) (finding concern about the parties' relative means mitigated where "the costs associated with pursuing this action would [not] increase markedly if transfer were granted"). For the same reason, the Courts' respective abilities to compel all relevant witnesses—who all reside in either New York or Connecticut—are one and the same. *See* Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person"). And, again, because the majority of probable witnesses reside in and around Connecticut and New York, both venues are equally convenient for their travel. *See Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*, 2012 WL 5512164, at *3 (S.D.N.Y. Nov. 14, 2012) ("New York and Connecticut are neighboring states . . . the inconvenience of litigating in a neighboring state is minimal.").

Plaintiff's choice of forum does not tilt the balance in his favor. "In a class action, the named plaintiff's choice of forum is afforded little weight." *Eichenholtz v. Brennan*, 677 F. Supp. 198, 202 (S.D.N.Y. 1988); *see also Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 516 (D. Conn. 2011) ("The Second Circuit . . . has acknowledged that district courts may give less weight to this factor in national class actions"). Further, "a plaintiff's choice of forum is entitled to substantially less deference when the forum she selects is not her home district." *Lewis-Gursky v. Citigroup,*

*Inc.*, 2015 WL 8675449, at *2 (S.D.N.Y. Dec. 11, 2015). Because Plaintiff does not reside in New York, this factor is neutral.[6]

Moreover, the fact that there is a related bankruptcy proceeding pending in the Southern District of New York is of no significant weight. Although pending in the same District as this case, the bankruptcy proceeding is before a different Court, and thus the risk (if any) of inconsistent adjudications between the bankruptcy proceeding and this case is the same regardless of whether the case is litigated here or in the District of Connecticut. Moreover, both of the securities cases are governed by Second Circuit precedent, as is the bankruptcy proceeding in this District, and so the same law will apply to all three proceedings regardless of transfer.

Plaintiff therefore cannot show that the balance of convenience weighs against transfer, much less carry his burden that the relevant factors "weigh decidedly in favor of the second [case]" such that the first-filed rule does not control. *Clean Vehicle Sols. Am. LLC*, 2015 WL 5459852, at *5. The transfer motion should be granted.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter an Order pursuant to 28 U.S.C. § 1404(a) transferring this action to the District of Connecticut.

[6] Arguably, this factor actually favors transfer to the District of Connecticut. *See, e.g.*, *Iconic IP Holdings, L.L.C. v. Gerrit's Brands, Inc.*, 2021 WL 7543607, at *6 (E.D.N.Y. May 21, 2021) ("[W]here the first-filed rule applies and there are significant overlapping factual issues between the two pending cases, the choice of forum factor favors the district of the first-filed action.") (citation omitted).

Dated: May 23, 2023
New York, New York

Respectfully Submitted,

**WEIL, GOTSHAL & MANGES LLP**

*/s/ Jonathan D. Polkes*
Jonathan D. Polkes
Caroline Hickey Zalka
Stefania D. Venezia
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
jonathan.polkes@weil.com
caroline.zalka@weil.com
stefania.venezia@weil.com

*Attorneys for Defendant Digital Currency Group, Inc.*