UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOBIAS MOELLER-BERTRAM, individually, and on behalf of all others similarly situated,<br><br>                                  Plaintiff,<br><br>          v.<br><br>GEMINI TRUST COMPANY, LLC; and DIGITAL CURRENCY GROUP, INC.,<br><br>                                  Defendants. | Case No. 1:23-cv-02027<br><br>Hon. Lewis J. Liman |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DIGITAL CURRENCY GROUP, INC.'S MOTION TO TRANSFER TO THE DISTRICT OF CONNECTICUT**

 

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000

*Attorneys for Defendant Digital Currency Group, Inc.*

Dated: June 13, 2023

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The *Picha* Action Does Not And Should Not Implicate The First-Filed Rule ................................................................................................................................. 3

        A.    The *Picha* Action Is Not Related To Either The *McGreevy* Or *Moeller-Bertram* Actions. ........................................................................... 3

        B.    Plaintiff's Invocation Of The First-Filed Rule Frustrates Its Purpose ............................................................................................................. 6

    II.    Plaintiffs Do Not Rebut The Strong Presumption Requiring Transfer To The First-Filed Forum ............................................................................................... 8

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alden Corp. v. Eazypower Corp.*,
  294 F. Supp. 2d 233 (D. Conn. 2003) ................................................................................... 3

*Armouth Int'l, Inc. v. Fallas*,
  2021 WL 795448 (S.D.N.Y. Mar. 1, 2021) ............................................................................ 5

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
  2014 WL 1087960 (S.D.N.Y. Mar. 19, 2014) ........................................................................ 6

*Comedy Partners v. St. Players Holding Corp.*,
  34 F. Supp. 2d 194 (S.D.N.Y. 1999) ...................................................................................... 6

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2d Cir. 2000) ................................................................................................... 3

*In re Cuyahoga Equip. Corp. v. U.S.*,
  980 F.2d 110 (2d Cir. 1992) ................................................................................................... 3

*Galante v. Mercedes Benz of Massapequa, LLC*,
  2022 WL 1019007 (E.D.N.Y. Jan. 20, 2022) ......................................................................... 6

*Henry v. JP Morgan Chase & Co.*,
  2015 WL 13949710 (S.D.N.Y. May 11, 2015) ...................................................................... 6

*Moscati v. Kelly*,
  2015 WL 3605768 (E.D.N.Y. June 5, 2015) .......................................................................... 8

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
  322 F. Supp. 2d 505 (S.D.N.Y. 2004) .................................................................................... 8

*Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*,
  2012 WL 5512164 (S.D.N.Y. Nov. 14, 2012) ........................................................................ 9

*Wells Fargo Advisors, L.L.C. v. Tucker*,
  195 F. Supp. 3d 543 (S.D.N.Y. 2016), *aff'd sub nom. Wells Fargo Advisors,
  L.L.C. v. Sappington*, 884 F.3d 392 (2d Cir. 2018) ............................................................... 5

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................................ 9

**Other Authorities**

Local Civ. R. 1.6 ................................................................................................................................6

**PRELIMINARY STATEMENT**

Plaintiff's opposition brief concedes both that this second-filed action is related to the first-filed *McGreevy* action and that the presumptive rule requires transfer of this second-filed action to the District of Connecticut. This should end Plaintiff's opposition. But in an opportunistic attempt to circumvent this clear mandate, Plaintiff posits that a *different* action pending in this District—*Picha v. Gemini Trust Company, LLC*—is related to this action (and the *McGreevy* action) and is properly treated as the "first-filed" action.[1] Tellingly, however, although Plaintiff now identifies the *Picha* action as the first-filed case, he did not previously designate the action as related to this one (pursuant to Local Civil Rule 1.6) and at no time has requested that the cases be consolidated. The reason is self-evident: the *Picha* action involves different claims and different parties.

There is not a single overlapping claim or theory of liability between *Picha* and these cases. In *McGreevy* and this action, the plaintiffs allege that the tri-party lending agreements between Gemini, Genesis, and investors constitute unregistered securities; in *Picha*, the plaintiffs allege that the Gemini Earn interest accounts are the relevant unregistered security. In *McGreevy* and this action, the plaintiffs allege that DCG misled investors as to the solvency of Genesis; in *Picha*, the plaintiffs allege that Gemini misled investors as to the security and nature of the Gemini Earn program. In *McGreevy* and this action, the plaintiffs allege control-person liability against DCG arising out of the alleged primary securities violations by Genesis; in *Picha*, the plaintiffs allege control liability against the Winklevoss twins arising out of the alleged primary securities violations by *Gemini*. And in *Picha*, the plaintiffs allege that Gemini operated as an unregistered

---

[1] *See* Ex. A (Am. Class Action Compl., *Picha v. Gemini Tr. Co.*, 1:22-cv-10922-NRB (S.D.N.Y. Mar. 17, 2023)), ECF No. 47.

securities exchange and broker-dealer; no such allegations are raised here or in *McGreevy*. The first-filed rule does not apply to *Picha*.

Moreover, treating the *Picha* action as first-filed would contravene the very purpose of the rule, which is to promote the conservation of judicial resources and protect defendants from having to litigate similar claims in separate forums and risk inconsistent results. Keeping this action in this Court would not conserve any judicial resources or reduce the risk of inconsistent adjudications. Moreover, the only party who could possibly be burdened by transfer—Gemini, who is a party here and in the *Picha* action—has not objected to transfer. Plaintiff's half-hearted argument that the Southern District of New York presents a more convenient forum than the District of Connecticut does not carry Plaintiff's heavy burden to overcome the first-filed rule. The *McGreevy* action is the relevant, first-filed action, and there are no grounds for overcoming the presumption under the first-filed rule.

To be clear, DCG has no preference as to in *which* court this action and the *McGreevy* action are tried—what it does not want is to litigate the same claims against the same class (if such litigation is even possible) in two different forums. Because Second Circuit precedent directs that the District of Connecticut is the proper forum, that is the court to which this case should be sent.

## ARGUMENT

Plaintiff concedes that the *Moeller-Bertram* and *McGreevy* actions are related and that the *McGreevy* action was filed before the *Moeller-Bertram* action. Opp'n Br. 7–8. Plaintiff further acknowledges that the forum of the first-filed action presumptively prevails. *Id.* Accordingly, transfer to the District of Connecticut, as the forum of the first-filed *McGreevy* action, should be granted. Plaintiff's efforts to overcome that presumption fail.

I.      **The *Picha* Action Does Not And Should Not Implicate The First-Filed Rule**

Plaintiff's chief argument for avoiding transfer is that another case—the *Picha* action—was filed first in the Southern District of New York and, therefore, should be treated as the first-filed action for purposes of transfer. Plaintiff overlooks that the *Picha* action has nothing beyond superficial similarity with this action and the *McGreevy* action. Moreover, invocation of the first-filed rule with respect to the *Picha* action would make no sense in these circumstances.

A.      **The *Picha* Action Is Not Related To Either The *McGreevy* Or *Moeller-Bertram* Actions.**

In determining whether the first-filed rule applies, "the court must carefully consider whether in fact the suits are duplicative." *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 235 (D. Conn. 2003) (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 133 (2d Cir. 2000)). Application of the rule requires that both cases have "identical or substantially similar parties and claims." *In re Cuyahoga Equip. Corp. v. U.S.*, 980 F.2d 110, 116–17 (2d Cir. 1992).

While the *Picha* action names Gemini as a defendant and its allegations generally arise from the Gemini Earn program, the similarities to *Moeller-Bertram* and *McGreevy* end there. *See Curtis v. Citibank*, N.A., 226 F.3d 133, 136 (2d Cir. 2000) ("A court must . . . not . . . be swayed by a rough resemblance between the two suits."). Plaintiff's conclusory assertions that the "core allegations" in the three matters are "substantially the same," Opp'n Br. 9, are belied by a cursory review of the pleadings.

The *Picha* action is a putative securities class action against Gemini and Gemini's co-founders, Tyler and Cameron Winklevoss (collectively, the "Winklevosses"). *See generally* Ex. A. DCG is not named as a defendant. The *Picha* plaintiffs pursue three theories of liability. First, they allege that the Gemini Interest Accounts ("GIAs") Gemini offered to investors are unregistered securities. *Id.* ¶¶ 1–4, 103–08, 191–99. Second, they allege that Gemini

3

misrepresented to investors that the GIAs "were a secure method of collecting interest." *Id.* ¶¶ 1–3, 29–51, 109–147, 159–166. And third, they allege that Gemini operated as both an unregistered national securities exchange and an unregistered broker-dealer. *Id.* ¶¶ 4, 19–28, 167–83.[2] The *Picha* plaintiffs also assert control-person liability against the Winklevosses premised on Gemini's alleged securities violations. *Id.* ¶¶ 184–90, 200–06.

None of those theories of liability is at issue in this action or the *McGreevy* action. Contrary to Plaintiff's contention that all three actions allege that "the Gemini Earn program was an illegal sale of unregistered securities," Opp'n Br. 8, the plaintiffs in *Picha* direct their allegations at the GIAs, Ex. A ¶¶ 1–4, 103–08, 191–99, whereas here and in *McGreevy*, the plaintiffs allege that the tri-party lending agreements between Gemini, Genesis, and Earn Program participants constituted unregistered securities. *Moeller-Bertram* Compl. ¶¶ 7–10, 57; *McGreevy* Compl. ¶¶ 95–103, 117, 208. That is a meaningful distinction: Genesis (and DCG) had *no* involvement in the issuance of the GIAs, which were essentially bank accounts in which Gemini investors could deposit their crypto assets. Those accounts bear little relation to the lending agreements, which were multi-party contractual agreements governing the terms of future loans between Genesis, Gemini, and Gemini investors. *See generally* Ex. B (Master Digital Asset Loan Agreement). The lending agreements say nothing about how Gemini would store investors' cryptocurrency. *Id.* Accordingly, whether the lending agreements qualified as securities (a central issue here and in *McGreevy*) does not inform whether the GIAs qualified as securities (the issue in *Picha*), or vice versa.

---

[2] In addition, the *Picha* plaintiffs assert a host of common law claims, Ex. A ¶¶ 207–32, none of which have any relevance to the claims in *McGreevy* or *Moeller-Bertram*.

4

The other theories of liability asserted in *Picha* are likewise dissimilar to those asserted here and in *McGreevy*. While the *Picha* plaintiffs allege that statements regarding the security of GIAs were misleading, *Picha* Compl. ¶¶ 1–3, 29–51, 109–47, 159–66, the plaintiffs here and in *McGreevy* challenge only DCG's assumption of a $1.1 billion promissory note as a purported effort to conceal Genesis's insolvency. *Moeller-Bertram* Compl. ¶¶ 84–92; *McGreevy* Compl. ¶¶ 162–186.[3] The plaintiffs here and in *McGreevy* seek to impose control-person liability only on DCG—as a result of *Genesis*'s alleged securities violations—and do not even name the Winklevosses as defendants. *Moeller-Bertram* Compl. ¶¶ 69–92, 97, 105–12; *McGreevy* Compl. ¶¶ 192–201, 208, 217–34. And neither here nor in *McGreevy* do the plaintiffs allege that Genesis unlawfully operated as an unregistered securities exchange or broker-dealer—one of the core allegations in *Picha*.

Where the two cases at issue "involve substantially different claims," along with "different facts, different evidence and different law," the first-filed rule does not apply. *Wells Fargo Advisors, L.L.C. v. Tucker*, 195 F. Supp. 3d 543, 553 (S.D.N.Y. 2016), *aff'd sub nom. Wells Fargo Advisors, L.L.C. v. Sappington*, 884 F.3d 392 (2d Cir. 2018); *see also Armouth Int'l, Inc. v. Fallas*, 2021 WL 795448, at *5 (S.D.N.Y. Mar. 1, 2021) (declining to apply the first-filed rule because the "claims and rights raised in the two actions . . . differ substantially") (citation omitted). As set forth above, even a cursory review of the allegations in the *Picha* action—beyond the surface-level analysis Plaintiff offers—confirms that is the case here. Indeed, prior to his opposition brief, Plaintiff *himself* (as well as the parties in *Picha*) apparently did not consider *Picha* a related action—if he had, he would have filed a notice of related case, which is proper whenever "two

---

[3] The *McGreevy* plaintiffs make these allegations in support of both their Section 10(b) and Sections 5 and 12(a)(1) claims, whereas Plaintiff makes these allegations only in support of his Sections 5 and 12(a)(1) claim, as he does not pursue any Section 10(b) claims.

cases . . . arise out of the same transactions or events," *Galante v. Mercedes Benz of Massapequa, LLC*, 2022 WL 1019007, at *8 (E.D.N.Y. Jan. 20, 2022), and is due "[a]s soon as the attorney becomes aware of such relationship." Local Civ. R. 1.6. That Plaintiff evidently did not even consider *Picha* to arise of the same transaction as *Moeller-Bertram* is proof-positive that there are no similarities between the *Picha* action and this case that would give rise to application of the first-filed rule.[4]

### B. Plaintiff's Invocation Of The First-Filed Rule Frustrates Its Purpose

Additionally, it would make no sense to apply the first-filed rule to the *Picha* action. The purpose of the first-filed rule is to "'promote docket efficiency and interests of comity,'" as well as "'to avoid burdening a party with litigating the same matter in separate lawsuits.'" *Henry v. JP Morgan Chase & Co.*, 2015 WL 13949710, at *2 (S.D.N.Y. May 11, 2015) (citation omitted); *see also U.S. ex rel. Cestra v. Cephalon, Inc.*, 2014 WL 1087960, at *4 (S.D.N.Y. Mar. 19, 2014) (noting that the first-filed rule "involves 'considerations of comity' that militate against multiple district courts simultaneously entertaining competing lawsuits") (citation omitted). Parties rely on the first-filed rule to avoid "'the vexation of concurrent litigation over the same subject matter,'" *U.S. ex rel. Cestra*, 2014 WL 1087960 at *4 (citation omitted), and "the considerable expense and potential for inconsistent adjudication that duplicative litigation would entail," *Comedy Partners v. St. Players Holding Corp.*, 34 F. Supp. 2d 194, 195–96 (S.D.N.Y. 1999).

---

[4] Contrary to Plaintiff's assertion, the stipulation between Plaintiff and Gemini to stay Gemini's motion to compel arbitration pending a decision on Gemini's motion to compel arbitration in the "similar" *Picha* action, Opp'n Br. 10 n.7, has no bearing on whether *Picha* is a related action for purposes of transfer. Instead, the "similar" issue as between *Picha* and *Moeller-Bertram* pertains solely to whether the arbitration provision under the Gemini Earn User Agreement, which governs each plaintiff's relationship with Gemini, is enforceable. *See* ECF No. 15 at 11; ECF No. 30 at 1.

Plaintiff's invocation of the first-filed rule advances none of these principles. Plaintiff conspicuously does not contend that this action should be consolidated with the *Picha* action, instead suggesting that the propriety of consolidation "may be determined at a later date after the pending motions to compel arbitration in both actions are resolved." Opp'n Br. 10 n.7. Plaintiff is thus not even willing to concede that this case and the *Picha* action should proceed before the same Judge or on the same track. But the first-filed rule encourages efficiency by providing a *single forum* for related claims—there is no point to the rule if the actions are not even put before the same tribunal. By contrast, transfer to the District of Connecticut would facilitate consolidation of this suit with *McGreevy*, which involves the identical putative class and nearly identical claims. In fact, swift transfer to the District of Connecticut is particularly appropriate so that the cases can be consolidated prior to the *McGreevy* plaintiffs' impending filing of their amended complaint on July 12. *See McGreevy* Dkt., ECF No. 58

Additionally, the entirety of the claims in *Picha* are the subject of a pending motion to compel arbitration. *Picha* Dkt., ECF No. 51–52. It is thus possible—and, DCG submits, likely—that the claims in *Picha* will not even be litigated in federal court, rendering application of the first-filed rule to the *Picha* action wholly ineffective in reducing duplication or increasing efficiency. The fact that Plaintiff suggests consolidation should be deferred until after resolution of the motions to compel arbitration, Opp'n Br. 10 n.7, confirms that Plaintiff's invocation of the first-filed rule is not intended to enhance judicial economy.

Moreover, even if there were some risk of duplicative litigation by granting transfer, it would not fall on Plaintiff. The first-filed rule typically is invoked by either (1) a plaintiff seeking to protect his initial choice of forum when the defendant in the earlier suit files a second case against that plaintiff, or (2) a defendant facing multiple lawsuits filed by different plaintiffs. *See,*

*e.g.*, *Moscati v. Kelly*, 2015 WL 3605768, at *3 (E.D.N.Y. June 5, 2015). Plaintiff is neither, as he is not a party to any relevant suit other than this one. Rather, any conceivable burden of duplicative litigation if transfer were granted would fall on *Gemini*, *cf.* Opp'n Br. 10, who has not opposed the transfer motion. On the other hand, DCG faces a substantial burden of duplicative litigation if transfer were denied.

Put simply, if the transfer motion were granted, there would be *one* case in Connecticut litigating the securities claims relating to the lending agreements and *one* case in New York either litigating or, more likely, arbitrating the securities claims relating to the GIAs. If the transfer motion were denied, there would be *three* cases, all proceeding along different tracks. Even if Plaintiff could mechanically invoke the first-filed rule as relevant to the *Picha* action (he cannot), its application here would contravene the very purposes for which the rule was designed.

## II. Plaintiffs Do Not Rebut The Strong Presumption Requiring Transfer To The First-Filed Forum

Because the *Picha* action does not factor into the analysis, the *McGreevy* action is properly considered the first-filed case, and the District of Connecticut is the presumptive forum for this closely related case. Plaintiff's appeal to the balance of convenience, *id.* at 11–12, fails to carry his "heavy burden" of overcoming the first-filed rule, *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 507–10 (S.D.N.Y. 2004).

First, as for the convenience of the parties, Plaintiff asserts that Gemini's headquarters is in New York. Opp'n Br. 11. That is a red herring—Gemini takes no position on the Motion, Mot. 1 n.1, negating any relevance of the forum's convenience to Gemini.

Second, Plaintiff asserts the location of the documents and locus of operative facts weigh against transfer because "the bulk of the evidence related to the core allegations of the unlawful sale of unregistered securities is located in New York." Opp'n Br. 11–12. But Plaintiff does not

and cannot deny that this case (unlike the *Picha* action) implicates discovery from DCG, which Plaintiff acknowledges is located in Connecticut. *Id.* at 12. At best, this factor is neutral—it certainly does not serve to overcome the first-filed rule.

Lastly, Plaintiff submits that the convenience of the witnesses "substantially favors keeping this action in New York" because critical witnesses are located in New York. *Id.* at 12. Plaintiff cannot credibly argue that litigating a mere 60 miles away poses such a significant inconvenience to the witnesses that transfer should be denied. Indeed, "New York and Connecticut are neighboring states," and "the inconvenience of litigating in a neighboring state is minimal." *Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*, 2012 WL 5512164, at *3 (S.D.N.Y. Nov. 14, 2012). Accordingly, Plaintiff fails to rebut the presumption of the first-filed rule.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter an Order pursuant to 28 U.S.C. § 1404(a) transferring this action to the District of Connecticut.

| | |
|---|---|
| Dated: June 13, 2023<br>New York, New York | Respectfully Submitted,<br><br>**WEIL, GOTSHAL & MANGES LLP**<br><br>*/s/ Jonathan D. Polkes*<br>Jonathan D. Polkes<br>Caroline Hickey Zalka<br>Stefania D. Venezia<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone:  (212) 310-8000<br>Facsimile:  (212) 310-8007<br>jonathan.polkes@weil.com<br>caroline.zalka@weil.com<br>stefania.venezia@weil.com<br><br>*Attorneys for Defendant Digital Currency Group, Inc.* |